HEWITT, *Appellant*, v. STEELE.

Division Two, December 7, 1893.

1. **Practice:** ORDER GRANTING NEW TRIAL: BURDEN OF PROOF. It devolves upon one appealing from the order of the trial court granting a new trial to show that the court committed error in so doing.

2. ————: ————: REASONS OF COURT. Where the trial court rendered a written opinion giving its reasons for granting a new trial, but failed to have the same spread upon its records, the mere filing of such opinion among the papers in the case did not make it a part of the record.

3. ————: ————: ————. Although the court did not comply with the requirement of the statute in failing to make its reasons for granting a new trial a part of the record, still its action will be upheld if it can be sustained upon any ground set forth in the motion for a new trial.

4. ————: ————: ————. The action of the trial court in granting a new trial will be sustained, if it can be done upon any of the grounds set out in the motion for that purpose, even though the grounds upon which it was granted had been entered of record and notwithstanding the court may have given a wrong reason for sustaining the motion.

5. **Excessive Verdict.** The verdict in this case *held* to have been excessive and to have been properly set aside for that reason.

6. **Corporation :** VALUE OF STOCK: EVIDENCE. The value of the property of a corporation may be shown for the purpose of showing the value of its shares of stock.

7. **Practice:** INSTRUCTION. An instruction that certain acts of defendant will not excuse him for needlessly and carelessly and in bad faith sacrificing certain stock of plaintiff which he held as collateral and to manage and sell for her, is misleading and prejudicial to defendant when there was no evidence upon which to base it.

8. ————: ————. An instruction which is a mere abstraction, foreign to any issue or evidence in the case, should not be given.

*Appeal from Pike Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*George Robertson* and *H. S. Priest* for appellant.

(1) The verdict is not against the law or the evidence. It is abundantly supported by the evidence. Plaintiff and the witness McAlister both testified that in March, 1887, when the shares were sold they were worth seventy cents on the dollar. (2) The court did not admit incompetent or improper testimony offered by plaintiff. The only testimony complained of by defendant is that plaintiff was permitted to give in evidence the value of the property as a circumstance to arrive at the value of the shares. Shares in a corporation represent fractional interests in the entire concern, and their value necessarily depends upon the real capital which the company owns. The value of the capital necessarily determines the value of the shares. Morawetz on Private Corporations, secs. 288, 826. (3) The instructions of plaintiff fairly submit the question of defendant's negligence in the sale of the stocks, and as to the duty he was under to plaintiff. Defendant's first instruction submits the case upon the same theory of plaintiff's, and also tells the jury to take into consideration the value of the property of the corporation. (4) The verdict was not excessive. At the time the stocks were sold the property was worth $32,000, or the stocks worth $70 dollars per share. According to the evidence of McAlister the $5,000 debt had then been paid. But if it were excessive the plaintiff's offer to remit all over $4,000 of the verdict cured that error.

(5) An appeal will lie from an order sustaining a motion for new trial, when a final judgment of dismissal is entered, as was in this case. *Bank v. Armstrong,* 92 Mo. 265.

*Elijah Robinson* for respondent.

(1) Plaintiff having appealed from the order of the trial court granting a new trial, it devolves upon him to show from the whole record in the case that the new trial could not have been properly granted for any of the reasons assigned in the motion. *Bank v. Armstrong,* 92 Mo. 265. This case is on all fours with the case at bar, and in delivering the opinion, Judge RAY, after reciting the reasons assigned in the motion for new trial, which had been sustained, says: "If any of these objections are well taken the plaintiff must fail, and in that event the judgment appealed from affirmed." *State ex rel. v. Adams,* 84 Mo. 310; *Lovell v. Davis,* 52 Mo. App. 342. (2) Even if the order granting a new trial had specified of record the grounds upon which the motion was sustained, it would still be the duty of this court to examine the entire record in the case and ascertain whether or not the action of the trial court, in granting a new trial, could be sustained for any reason, either that assigned in the record entry, or any other reason mentioned in the motion for a new trial. (3) However, in this case it can not be said that the order of the court specified of record the ground, or grounds, on which the motion for new trial was granted. This is true for two reasons: The *first* is, that the written opinion delivered by the court constitutes no part of record, and cannot be considered by this court as a compliance with the provisions of section 2241, Revised Statutes, 1889. *Taylor v. Scherpe,* 47 Mo. App. 257. The *second* is, that the written opinion of

the trial court cannot be properly construed as limiting the reasons for sustaining the motion for new trial to any one of the grounds in said motion specified. (4) The question for this court to determine is whether or not the action of the trial court in granting a new trial can be sustained upon any one or more of the grounds specified in said motion. The motion for new trial was properly sustained, and the action of the court in sustaining the same could properly have been placed on either the second, fourth, sixth, seventh, ninth, tenth, eleventh or twelfth ground assigned. (5) The court committed error in giving instructions on the part of the plaintiff, especially the second and third, and for that reason alone a new trial should have been granted. (6) The verdict was clearly against the weight of evidence, and for that reason the court properly set it aside. *McKay v. Underwood*, 47 Mo. 147; *McDonough v. Nicholson*, 46 Mo. 35; *Eidemiller v. Kump*, 61 Mo. 342; *Reed v. Ins. Co.*, 58 Mo. 429.

BURGESS, J.—In 1881 a corporation was organized in the city of St. Louis by the name of the Mound Street Warehouse Company with a capital stock of $50,000 divided into five hundred shares of $100 each, and $45,000 of it was paid up. One hundred and seventy-five shares were issued to Mr. Hewitt, the husband of this plaintiff, and twenty-five shares were issued to the defendant; the other shares were owned by other parties in St. Louis and in the state of Indiana. All of the capital stock was spent in purchasing real estate in St. Louis in the neighborhood of where was afterward built the Merchants' bridge, and in putting a building thereon and for machinery with which to carry on the business of an elevator and warehouse.

The business was continued along until in November, 1882, when the plaintiff's husband died. He

bequeathed all his interest in this corporation to her. The defendant had, during this time and for a long time prior thereto, lived in Mexico, and the plaintiff knew him in her childhood and the families were connected by marriage. She had introduced her husband to Mr. Steele and they both had implicit confidence in his integrity and business capacity, so much so that the husband, shortly before his death, invited Mr. Steele to his house and asked him to look after his wife's interest in the corporation after his death. At the time of Mr. Hewitt's death this stock was hypothecated at a bank in St. Louis for a debt of something like $4,000, and it continued so until the defendant took up the debt at the bank for plaintiff and added something to it and took plaintiff's note for $6,000 and took all of her shares of stock in said corporation as collateral, and then undertook, as her trustee, to control and manage it for her. The defendant undertook this management on the twenty-fourth day of August, 1886. This property, up to this time, had been paying no dividend, and the prospects were not flattering that it would do so soon.

In November, 1882, plaintiff's husband died, and S. C. Bunn was appointed administrator of his estate. The estate was several thousand dollars in debt, and the stock in the warehouse seems to have been the only assets. Five thousand dollars of this stock was held by a bank in St. Louis to secure the payment of a note of $2,700. Plaintiff applied to the payment of this note $2,000 insurance money, and borrowed from defendant money to pay the other $700. Upon payment of this $2,700 note, the $5,000 in stock was turned over to the administrator. The administration was continued until about 1885 or 1886, when an arrangement was entered into whereby plaintiff assumed the payment of the indebtedness, and the entire $17,500

stock was turned over to h'er under the provisions of the will. The indebtedness of the estate then amounted to $4,500 to $4,600; and, to procure money with which to pay this, the plaintiff borrowed $4,500 from a bank in St. Louis and deposited the one hundred and seventy-five shares of stock as collateral security. The company lost money continually from the time it was organized. Both the ground and the building seemed to have cost the company more than they were actually worth, and upon the completion of the building the company was compelled to borrow $5,000 to finish paying for it.

In the summer of 1885, defendant sold his stock, for which he had paid par, for sixty cents on the dollar, and informed plaintiff of the fact at the time he sold. In August, 1886, plaintiff, on her return to St. Louis, after an absence of some weeks, received a note from the bank informing her that her note for $4,500 must be paid at once, or the bank would sell the stock which it held as collateral. She immediately wrote to defendant, appealing to him to assist her in preventing the sacrifice of the stock. She told him that unless he came to her rescue at that time he would lose what she then owed him, which amounted to $1,200 or $1,400. Defendant, who was a man of limited means, borrowed from the bank at Mexico $4,500, and to secure the same executed a deed of trust on all the real estate he owned, including his homestead. With this $4,500 he took up the note in bank. Plaintiff then executed to him her note for something over $5,700, being the amount of her indebtedness to him, and deposited with him as collateral to secure the payment of said note the one hundred and seventy-five shares of stock in the warehouse company. It was agreed that he should manage the stock in such manner as to him might seem best, and in order that he might sell the same it was

duly assigned to him.   The company continued to lose money. .

. Defendant had borrowed from a bank at Mexico the $4,500 for only ninety days, and when he took up the stock in St. Louis for the plaintiff he informed her of the fact, and told her that she must make some arrangement to pay him on or before the expiration of the ninety days.   This she failed to do;   but at the expiration of the ninety days defendant succeeded in getting a renewal of his note in the bank at Mexico. He informed plaintiff of that fact, and requested her to get some other friend more able to do so, to carry the debt for her, or to make some other disposition to relieve him.   She repeatedly, both before and after the expiration of the first ninety days, told him to sell the stock on the best terms he could, she saying that all she desired was that defendant should not lose any money in the transaction.   In the fall or winter of 1886 the plaintiff went to Nevada, for the purpose of teaching school.   After going to Nevada, she wrote to defendant requesting him to hold the stock until after the first of January if possible; but, if he could not hold it, to sell it on the best terms he could get.

Defendant not only held the stock until after the first of January, 1887, but until the sixteenth of March, 1887, when he sold it for $6,100.   On the twelfth day of March, 1887, he received from the bank notice that his note would mature on the twenty-second, and that it must be paid.   After taking the stock into his possession, defendant went to the city of St. Louis for the purpose of making some disposition of it.   He called on quite a number of persons and endeavored to sell the stock.   He found no one outside of those interested in the corporation who would make an offer.   In the meantime, Mr. Mariner, one of the stockholders and officers of the corporation, had succeeded in getting

possession of a majority of the stock.   And defendant·
finally sold the stock in controversy to him for $6,100.

During the summer of 1887, the plaintiff was·
informed that the stock had been sold at, as she
alleged, a great sacrifice and began this suit.   The·
petition, leaving out the formal parts, contains the
following allegations:   Defendant did not accept said.
stock and interest of said plaintiff in said corporation
and did undertake to hold, manage and control the same·
for her, taking full power to manage and control the·
same for the best interest of plaintiff, which said agree-
ment to hold and manage said stock as aforesaid was put
into writing and is herewith filed and made a part of.
this petition.   That defendant under said instrument
and agreement did take possession of said stock and'
interests of plaintiff in said corporation and did under-
take to manage the same and did have the same under
his possession and control for the purpose aforesaid,
and did continue to hold the same for more than a
year thereafter and until the day hereinafter set forth.
Defendant did so negligently and carelessly handle and·
manage said stock and interest of plaintiff that said.
stock did depreciate in value, and from such misman--
agement, negligence, carelessness and imprudence on
his part, it was reduced in value to be worth only
seventy cents on the dollar, and in March, 1888, when.
the value of the property of said corporation was worth.
from $35,000 to $40,000, without the consent or direc--
tion of the plaintiff, did negligently, carelessly and
recklessly sell said stock of plaintiff for the sum of
$6,100, being about thirty cents on the dollar for·
plaintiff's stock and much less than it was worth, and'
defendant realized on said stock a sum just sufficient.
with which to pay his debt aforesaid from plaintiff to·
defendant, thereby leaving plaintiff nothing.   Where-
fore, plaintiff says by reason of defendant's negligence,,

carelessness and recklessness aforesaid, she is damaged in the sum of $9,000, for which she asks judgment and costs in this suit."

Defendant admitted in his answer the transfer of the stock to him by plaintiff, the purpose thereof as alleged by her, and then alleges "that he sold said stock at the highest price offered and the highest that could be obtained and for more than its actual cash value on the market; that the price received for said stock was $6,100, which was less than the amount of the note so held against plaintiff, and the interest he had paid said bank as aforesaid, and the necessary expense defendant was at in trying to obtain purchasers and in making the sale. Defendant states that he acted all through this matter in the management of said stock in perfect good faith, earnestly desiring to advance the plaintiff's interest and to obtain for her something for said stock over and above the amount secured by it, and that everything that was done in making the sale and otherwise was with the knowledge, consent and concurrence of plaintiff. And now having fully answered, defendant prays to be discharged." The reply was a general denial of all new matter.

The suit was begun in the Audrain circuit court, May 14, 1889. A change of venue was taken to Pike county, where a trial was had at the September term, 1890, of the circuit court, which resulted in a verdict in favor of the plaintiff for the sum of $6,250. Thereupon defendant filed a motion for a new trial, which the court sustained. The opinion of the court in sustaining this motion was preserved in the bill of exceptions. The case was redocketed for trial at the March adjourned term of the Pike county circuit court, whereupon the plaintiff refused to appear and the court ordered a nonsuit and entered a judgment against plaintiff, in favor of the defendant, whereupon plaintiff filed a motion to set

aside the judgment of dismissal, which the court over-ruled, and after saving her exceptions, she then perfected her appeal to this court. The plaintiff, on the hearing of the motion for new trial, offered to remit all the verdict in excess of the sum of $4,000.

Plaintiff having appealed from the order of the trial court granting defendant a new trial, dismissing her petition and rendering judgment against her for costs, it devolves upon her to show that the court committed error in so doing. While the defendant in his motion for a new trial assigned twelve different causes therefor, among others that the verdict was against the law and evidence in the case; that the court committed error in admitting illegal and incompe-tent evidence; in the exclusion of legal and competent evidence, and newly discovered evidence; as the court rendered a written opinion which was filed in the cause, which shows that the new trial was granted because of the admission of illegal and incompetent testimony as to the value of the assets, and amount of the indebted-ness of the corporation in arriving at the value of the shares of stock, it is contended by plaintiff that if no error was committed in this regard, that the new trial was improvidently granted; notwithstanding there may have been other errors committed during the trial for which a new trial might, and should, have been granted. In other words, that no action of the court, or error committed during the trial, is the subject of review, except that which the court said in its written opinion was the ground upon which the new trial was granted.

Section 2241, Revised Statutes, 1889, or that portion of it which has any application to his case, reads as follows: "Only one new trial shall be granted to either party; * * * and every order allowing a new trial shall specify of *record* the ground or grounds

on which said new trial is granted."

Although the court rendered a written opinion giving its reasons for granting a new trial, it was not spread upon the records of the court, and the mere act of filing it with the papers in the cause did not make it a part of the record. *Taylor v. Scherpe*, 47 Mo. App. 257.

By our statute the circuit courts are required to keep just and faithful records of their proceedings, and the clerks of such courts are required to keep full entries of the orders and proceedings of each day and to read them in open court on the morning of the succeeding day. It is thus made apparent that the opinion of the court in sustaining the motion for new trial did not become a part of the record of the court, and in this respect did not comply with the mandate of the law. But even if it did, if the court's action in granting the new trial can be sustained upon any other ground shown by the record and proceedings in the cause, the judgment must be affirmed.

In the case of the *Iron Mountain Bank v. Armstrong*, 92 Mo. 265, which was a case on all fours like the one at bar, except that in that case there was no written opinion filed by the trial court, it was held that, where a motion for a new trial is well taken on any of the grounds assigned therein, the appellant must fail and the judgment be affirmed. In the case of *Lovell v. Davis*, 52 Mo. App. 342, it was held that the trial court might go still farther in passing upon the question of granting a new trial, and is not confined to the grounds set out in the motion, but independent of the motion may grant a new trial for any good cause; and that the appellate court in reviewing the action of the trial court in granting a new trial is not confined to the grounds stated in the order of the court, but may consider any and all of those set out in the motion for a new trial.

We, therefore, conclude that if the action of the court in granting the new trial can be sustained upon any ground set forth in the motion for that purpose, that it is our duty to do so, although the court may have given the wrong reasons for sustaining the motion, and this, even though the grounds upon which the motion was sustained had been of record.

While we are not prepared to say that the verdict in this case was not so strongly against the weight of evidence as to be the manifest result of passion or prejudice, and that it should have been set aside on that ground, there is no question but that it was excessive and should have, for that reason, been set aside, if for no other. As confirmatory of this position the plaintiff, while the verdict recovered by her was $6,250, by her counsel, pending the motion for a new trial, offered to remit all in excess of the sum of $4,000, over one-third of the amount for which the jury found the verdict in her favor. This was an evidential conciousness and tacit admission, at least on her part, that the verdict was excessive. Litigants are not so magnanimous, as a general rule, as to remit any part of verdicts in their favor which their counsel know and advise them are not excessive and that such verdicts will not be set aside on that ground. The evidence in this case did not authorize nor justify the verdict for such an amount, if at all.

There was no error committed in permitting plaintiff to introduce testimony as to the value of the property, as it was a matter to be taken into consideration by the jury in arriving at the value of the shares of stock. If the property of the corporation was of little or no value, the value of the shares of stock would be more or less affected thereby. "In the absence of better evidence the market value of all the property of the corporation may be shown with the view to arriving at

the proportional value of the shares in controversy."
1 Spelling on Private Corporations, sec. 499; *Freon v.
Carriage Co.*, 42 Ohio St. 30; Cook on Stock and
Stockholders, sec. 581.

The second instruction given by the court at the
instance of the plaintiff is as follows: "The fact, if it
be a fact, that defendant had borrowed money from the
bank, which he had loaned to plaintiff, and that the
bank demanded him to return the money, did not
excuse him for needlessly or carelessly or in bad faith
sacrificing plaintiff's stock, if you find it was so sacri-
ficed."

This instruction is, we think, obnoxious to the
objection urged against it, that it calls the attention of
the jury to the question of bad faith on the part of
defendant in disposing of the stock, and seems to
imply that he acted in bad faith with reference thereto,
when there was no pretense that such was the case, and
there was no evidence upon which to predicate it. It
was misleading and prejudicial to the defendant.

Plaintiff's third instruction is also assailed. It
reads as follows: "The ignorance of defendant as to
plaintiff's legal rights in connection with the shares of
stock aforesaid, constitute no defense to this action,
and if her said rights and interests were impaired by
reason of said ignorance, then their finding should be
for plaintiff."

This instruction is more objectionable, if possible,
than the second. It placed plaintiff's right to a recov-
ery on the ignorance of defendant, as to her legal
rights in connection with the shares of stock, and then
told them that if her rights or interests were impaired
by reason of such ignorance, their finding should be
for plaintiff. There was no allegation in the petition
with reference to plaintiff's ignorance as to defendant's
rights, and what there was in the case upon which to

bottom this instruction it is difficult to conceive. It was a mere abstraction, foreign to any issue involved in the case, and should have been refused. It was misleading in the extreme. *Beauchamp v. Higgins*, 20 Mo. App. 514.

There was no necessity for any action upon the part of counsel for defendant in the court below, further than what was done, in order to have the action of that court reviewed by this. The presumption will be indulged in favor of the correctness of the action of the court below in granting the new trial, and we do not feel authorized to say that the discretion thus exercised, which rightfully belonged to the trial court, has been unjustly or arbitrarily exercised in this instance in setting aside the verdict and granting a new trial to defendant.

This leads to an affirmance of the judgment, and it is accordingly so ordered. All of this division concur.