EDWARD WRIGHT TAYLOR, Appellant, v. WABASH RAILROAD COMPANY and THE PULLMAN COMPANY, Respondents.

Kansas City Court of Appeals, April 6, 1908.

1. PASSENGER CARRIERS: Sleeping Car: Ejectment: Duties of Company: Mistake: Evidence. When the passenger has a ticket calling for a certain berth in a certain car, the company's servants should examine the same, direct him to the proper car and assign him to the proper berth; and if they make a mistake they cannot visit the serious consequences of the mistake upon the passenger by ejecting him from the berth and car, though inconsequential mistakes may be corrected; and on the evidence the case was properly sent to the jury.

2. ——: ——: ——: ——: ——: ——: Tort Feasors. And where the servants of the railway company join those of the sleeping car company in ejecting such passenger they become joint wrongdoers and are jointly liable.

3. **APPELLATE PRACTICE:** New Trial: Affirming Order. On appeal from an order granting a new trial the appellate court will not reverse simply because it dissents from the reason assigned by the trial court for granting a new trial if there are sufficient reasons for the order.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

REVERSED AND REMANDED (*with directions*).

*Joseph S. Rust* for appellant.

(1)   An appeal from an order of the circuit court granting a new trial brings only the ruling of the trial court on the motion for a new trial to the appellate court for review.   Haven v. Railroad, 155 Mo. 224; Connally v. Pehle, 105 Mo. App. 418; Bennett v. Mining Co., 110 Mo. App. 320.   Where there is any substantial evidence offered by plaintiff, it is error for the trial court to sustain a demurrer to the evidence or to nonsuit the plaintiff.   It is the province of the jury to pass upon the evidence.   Butts v. Bank, 99 Mo. App. 172; Knapp v. Hanley, 108 Mo. App. 360; Ladd v. Williamson, 104 Mo. App. 397; Gannon v. Gas Co., 145 Mo. 516.   (5)   On appeal this court will not reverse the verdict of the jury upon the weight of the evidence. Colyer v. Railroad, 93 Mo. App. 153; Temple v. Railroad, 83 Mo. App. 69; Woodard v. Cooney, 111 Mo. App. 162.

*J. L. Minnis* and *Sebree, Conrad & Wendorff* for respondent, Wabash Railroad Co.

(1)   The court did right in granting a new trial. The plaintiff was in the wrong berth and defendant, Wabash Railroad Company's instructions numbered 3 and 4, which were refused by the court correctly stated the law and should have been given.   (2)   Plaintiff was in the wrong berth and it was his duty to vacate the same upon the conductor's request, and when he

refused to do so it was the trainmen's duty to eject him, using no more force than was necessary. Boling v. Railroad, 189 Mo. 216; Car Co. v. Dupre, 54 Fed. 646; Randell v. Railroad, 102 Mo. App. 342; McQuerry v. Railroad, 117 Mo. App. 262; Kellett v. Railroad, 22 Mo. App. 366. (3) Defendants had the right to require plaintiff to occupy the berth which he purchased and none of the trainmen had the right to put him into a berth purchased by another passenger, and if by mistake he got into the wrong berth, it was the duty of the trainmen to cause him to yield it up to the person who purchased it. Boling v. Railroad, 189 Mo. 234; Mosher v. Railroad, 127 U. S. 390; Boyland v. Railroad, 132 U. S. 146; Kellett v. Railroad, 22 Mo. App. 366; Claybrook v. Railroad, 19 Mo. App. 437. (4) Plaintiff's instruction numbered 1 was erroneous. The cause of action alleged in plaintiff's petition is that plaintiff was wrongfully assaulted and ejected from a berth in a Pullman car attached to a Wabash train, but there was no evidence to support either allegation. Osteryoung v. Transit Co., 108 Mo. App. 706. (5) The court erred in giving plaintiff's instruction numbered 2 for it allowed the recovery of not only actual damages but also punitive damages, when there was no evidence authorizing the recovery of punitive damages. Boling v. Railroad, 189 Mo. 219; Logan v. Railroad, 77 Mo. 669; Claybrook v. Railroad, 19 Mo. App. 436. (6) There was no personal or bodily injury in this case, yet the plaintiff's instructions authorize not only the recovery of compensatory damages for mental anguish, but also punitive damages. In both these respects plaintiff's instructions were erroneous and directly opposed to the law as declared by this court and the St. Louis Court of Appeals. Grayson v. Transit Co., 100 Mo. App. 72; Boling v. Railroad, 189 Mo. 234; Logan v. Railroad, 77 Mo. 669; Claybrook v. Railroad, 19 Mo. 436; Strange v. Railroad, 61 Mo. 592; Connell v. Telegraph Co., 116

Mo. 34; Snyder v. Railroad, 85 Mo. App. 497; Deming v. Railroad, 80 Mo. App. 157; Trigg v. Railroad, 74 Mo. 153.

*Lathrop, Morrow, Fox & Moore* for respondent, The Pullman Company.

(1) The rule is that though the trial court errs in granting a new trial for the reason stated by such court, yet, if one or more other causes be set out which justify a new trial, the order granting it will be upheld on appeal. Haven v. Railroad, 155 Mo. 216; Connally v. Pehle, 105 Mo. App. 407; Bennett v. Mining Co., 110 Mo. App. 317, 320; Hewitt v. Steele, 118 Mo. 463; Emmons v. Quade, 176 Mo. 22; Udden v. O'Reilley, 180 Mo. 650; Morrison Mfg. Co. v. Roach, 104 Mo. App. 632. (2) We are unable to discover the application of the authorities cited by appellant under points numbered II, III, and IV in his brief to the issues presented to this court for review. Certainly this court cannot, upon the record in this case, feel justified in saying that the verdict of the jury is the only verdict that could have been rendered upon the evidence at the trial. (3) Respondent, The Pullman Company, earnestly insists that a new trial should have been granted for the reasons, among others, set out in its motion for a new trial. (4) Alleged abusive words cannot be treated as part of an assault. Stuppy v. Hof, 82 Mo. App. 272; Ickenroth v. Transit Co., 102 Mo. App. 597; Smith v. Railroad, 122 Mo. App. 85.

ELLISON, J.—The defendant Pullman Car Company was the owner and operated the sleeping car which appears in this controversy; and the defendant the Wabash Railway, is a carrier operating trains for the transportation of passengers, to one of which trains The Pullman sleeping car was attached. Plaintiff brought this action for damages on account of being ejected from the sleeping car by the joint act of the ser-

vants of both companies. A verdict was rendered for $252 actual and $500 punitive damages. The trial court afterwards granted a new trial on the ground that the evidence failed to make a case against the sleeping car company and that it committed error in refusing instructions three and four offered by the railroad company. Plaintiff thereupon appealed from that order.

The evidence in plaintiff's behalf tended to show that he resided in Kansas City and in the month of July, 1904, he visited the "World's Fair" at St. Louis. That on the evening or night of the 4th of that month he concluded to return home, and that he learned there were two Wabash trains due to leave for Kansas City, one at 10:15 p. m. and the other at 11:45 p. m., and being already provided with a return railroad ticket, he purchased of the Pullman company a sleeping car ticket entitling him to lower berth No 9 in car No. 1 attached to the 11:45 train. At about that time he was standing in hearing with his hand baggage at the Union Station in St. Louis from which the train was to depart, when he heard the cry of "all aboard the Wabash for Kansas City;" that he thereupon proceeded to the train, was admitted through the Wabash gate. There were several sleepers and the servants of defendants whom he first met examined both his tickets and directed him to a car further forward. He proceeded further on to other servants who examined his tickets, when the sleeping car porter informed him "this is your car," took his baggage, invited him to follow, when he (the porter) placed the baggage in lower berth No. 9, and he, plaintiff, went into the smoking compartment. While in that place smoking the sleeping car conductor called for his sleeping car ticket and assigned plaintiff to lower berth No. 9 by writing that figure and some other matter not understood by plaintiff on his ticket. The train was not on time in getting out of the sta-

tion, and plaintiff went to bed before it left. In the course of two hours, or more, the conductor or porter of the sleeping car awakened him and asked for his ticket. Plaintiff answered that it had been taken up. This was denied and he was ordered out of the berth; he refused to get up, whereupon he was informed if he did not he would be thrown out. He was told in an abusive and threatening manner that he had no ticket. This servant then left plaintiff and returned with the conductor and brakeman of the railway company. He was again ordered out. He insisted he had tickets and had given them up. The railway collector of tickets then produced the railroad ticket which had been surrendered to him and on which it was found he had endorsed "Lower berth car 1." But the collector protested that he had written those words on information given by plaintiff and that he had not seen a sleeping car ticket. Angry words were exchanged at this time and threats made of the use of knives and lanterns, and finally the bed clothing was pulled off of plaintiff and he was made to get out. He thereupon went into another sleeping car, bought and occupied a berth in that car for the balance of the trip. After having retired in the latter car and being unable to sleep on account of his humiliation and the excitement he had passed through, he again looked into his pockets for his sleeping car check and found it. He got up and sought out the sleeping car porter on the car from which he had been ejected, and also the conductor, and perhaps the collector who had taken up his railroad ticket, and showed it to them.

Evidence in behalf of the defendants tended to show that the plaintiff had gotten on the train which was due to leave St. Louis at 10:15, but which was late getting out on account of extraordinary travel and a heavy rain and confusion in the station yards. That lower berth No. 9 for that train had been sold to another person who came and desired to occupy it. That the servants

aforesaid were thereupon in duty bound, as they contend, to dispossess the plaintiff and turn over the berth to its rightful purchaser.

The record does not indisputably show, as intimated by defendant, that plaintiff did not get on the train which was due to leave at 11:45. In point of fact he got upon a train at the proper hour for the one he was to take; but it may have been the belated 10:15 train,— there was evidence tending to show it was. There seems to have been great confusion with the trains and it does not satisfactorily appear whether both trains left that night. We will, however, for the purposes of this case, assume that in point of fact plaintiff was on the wrong car and train and that the berth assigned to him and which he took possession of, had been sold to another.

Notwithstanding that, there was evidence tending to show that plaintiff exhibited his ticket to those in charge of the train and those in special charge of the sleeping car; and that the latter received him into the car and assigned him to the berth under the ticket which he had; yet defendants claim the right to force him to surrender it, regardless of the situation as it affected him. When one has a sleeping car ticket designating a certain car and berth, it is the duty of the servants in charge of such car to examine it and direct him to the proper car and to receive him in the proper car and to conduct him to and assign him the proper berth. If these servants, who for this purpose are the company itself, make a mistake, they should not be allowed to visit the very serious inconvenience upon the passenger which they inflicted in this case. It is not meant to say that a mere inconsequential mistake, not attended by serious and substantial loss or change of situation, would justify a passenger in refusing a reasonable request for correction. But here, after having deliberately placed the passenger in what he supposed

was his proper place, it is sought to force him to give it up under circumstances wholly unjustifiable and with the charge that he was not entitled to any place at their hands. We regard the claim as unreasonable and not justified by the law. And so it was regarded by the circuit court as is shown by the first instruction in plaintiff's behalf. The cases cited us by the Pullman Company, including that of Mann Car Co. v. Dupree, 54 Fed. 646, are not applicable to the facts in this case.

Instructions Nos. 3 and 4, refused by the court, and partly on account of which the new trial was granted, embodied the theories of defense which we have shown are untenable and they were properly refused and therefore their refusal did not afford ground for new trial. What we have written also shows that, in our opinion, there was evidence upon which to submit the liability of sleeping car defendant under the law, and the ground of no evidence was not warranted by the record.

Neither do we regard the authorities cited by the defendant railway company, including Boling v. Railroad Company, 189 Mo. 219, as applicaable to the facts which the evidence tended to prove. On the other hand we find that the acts of that defendant's servants, as above set out, showed they actively joined with the servants of the sleeping car company in the wrong perpetrated upon plaintiff, and the two companies thereby became joint wrong-doers and are jointly liable. ·

It is true, as contended by defendants, that though we might not agree with the trial court as to the soundness of the reasons assigned for granting the new trial, yet if other reasons stated in the motion are well founded the order will still be upheld. [Emmons v. Quade, 176 Mo. 22; Hewitt v. Steele, 118 Mo. 463; Bennett v. Mining Co., 110 Mo. App. 317.] But there were no other grounds justifying the granting of the motion. The case was fairly tried except in some respects where we

think instructions were more favorable to defendants than the law justifies. We conclude that the trial court's first impressions as to plaintiff's case were correct. We therefore reverse the judgment and remand the cause with directions to enter judgment on the verdict. All concur.