MARY IBA, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY et al., Appellants.

Kansas City Court of Appeals, May 5, 1913.

1. **DAMAGES: Case Not Removable: Order Removing Cause not Set Aside: Power of Court to Try Case.** Where the circuit court had ordered a case removed to the Federal court and on *certiorari* the Supreme Court had held the case not removable and quashed the removal order, it was not necessary for the trial court to first set aside its removal order before trying the case, since the Supreme Court had effectually disposed of it.

2. ———: ———. The fact that defendant was not a party to the *certiorari* proceeding and the Supreme Court's order quashing the removal order may not be *res adjudicata* as to it,

will not authorize the Court of Appeals to pass on the question of whether the defendant is entitled to have the cause removed, since the decision of the Supreme Court that the case is not removable is one the Court of Appeals is required to follow.

3. **TRIAL: Verdict: Right of Court to Set Aside: Duty.** . If the trial court is satisfied that the verdict is against the weight of the evidence, it not only has the right and power, but the imperative duty of setting the verdict aside and granting a new trial.

4. ———: ———: ———: **Discretion of Court: When Reviewable.** If the trial court considers the matter of granting a new trial and follows his judgment and exercises his discretion, his action in granting or refusing a new trial on the question of the weight of the evidence will not be reviewed. But when it appears from the record that the court is convinced that the verdict is against the weight of the evidence and that he feels "constrained to set the verdict aside" but refuses to follow his judgment because of an erroneous view that he should be governed by the verdict of a jury in another case over which he did not preside, and in which the issues are different, then his action in refusing a new trial on the question of the weight of the evidence will be reviewed, and a new trial will be granted by the appellate court.

Appeal from Buchanan Circuit Court.—*Hon. W. D. Rusk*, Judge.

REVERSED AND REMANDED.

*Culver, Phillip & Spencer* and *O. M. Spencer* for appellants.

(1)   The order removing this cause to the Federal court not having been set aside by the trial court, it had no jurisdiction to try the case.   Herryford v. Ins. Co., 42 Mo. 153; Stanley v. Railroad, 62 Mo. 511.   (2) The petition and bond for removal of the defendant railroad company being in form and the case being removable, the trial court lost jurisdiction when said. petition and bond were filed.   Berry v. Railroad, 64 Mo. 533; Stanley v. Railroad, 62 Mo. 508; Powell v. Railroad, 64 Mo. 544.   (3)   We have a statute much like Sec. 5425, known to the profestion as the Fellow-Servant Statute," which makes a railroad company

liable to its servants by reason of the negligence of any other servant "while engaged in the work of operating such railroad." The appellate courts of this State have held that the language "operating such railroad includes section hands working on the track or roadbed. Callahan v. Railroad, 85 Mo. App. 192; Thompson v. Chappell, 91 Mo. App. 297; Rice v. Railroad, 92 Mo. App. 35. (4) That it also includes employees engaged in operating a pile driver in building a bridge. Huston v. Railroad, 129 Mo. App. 576. (5) That it also includes employees engaged in loading and unloading baggage from a passenger train. Turner v. Railroad, 132 Mo. App. 38. (6) That it also includes an employee engaged in loading a freight car. Orendorff v. Railroad, 116 Mo. App. 348. (7) That the court has the control of its judgments and proceedings during the term with the inherent right to set aside or modify the same or grant new trials as the justice of the case may demand is now and always has been the law in this State. Ewart v. Pernston, 136 S. W. 422; Lovell v. Davis, 52 Mo. App. 347.

*Chas. C. Crowe* and *John S. Boyer* for respondent.

(1) There is no removal question in the case. The question as to whether the case was removable to the Federal court was settled on the 17th day of December, 1910, by the decision of the Supreme Court. State ex rel. v. Mosman, 231 Mo. 474; Applegate v. Insurance Co., 153 Mo. App. 63. (2) The jury found from the evidence that deceased safely boarded the train mentioned in evidence. He was, therefore, a passenger and entitled to the highest degree of care. Devoy v. St. Louis Transit Co., 192 Mo. 197; Anderson v. Railroad, 196 Mo. 442. (3) Under all the authorities in this State, and the facts in this case, this court will not consider any ground not mentioned in

the motion for a new trial, and filed within four days
after judgment. King v. Gilson, 206 Mo. 264, 280;
Rodan v. Transit Co., 207 Mo. 392, 406; Winn v. Grier,
217 Mo. 461; St. Louis v. Lawton, 189 Mo. 474;
Grisham v. Insurance Co., 130 Mo. App. 57, 63; Wil-
liams v. Railroad, 156 Mo. App. 677; Fussellman v.
Railroad, 139 Mo. App. 201; Brenton v. Thomas, 138
Mo. App. 73; Stauffer v. Railroad, 243 Mo. 323; Ewart
v. Peniston, 233 Mo. 695; Sterrett v. Railroad, 225
Mo. 111; Street v. School District, 221·Mo. 671; Lynch
v. Railroad, 208 Mo. 42; Bank v. Porter, 148 Mo. 183.

TRIMBLE, J.—Plaintiff, as the widow of Fred-
erick B. Iba, sues to recover $10,000 damages for the
death of her husband alleged to have been caused by
the joint carelessness and negligence of the defend-
ants in this way:

That defendant Phelan was the conductor of his
codefendant's passenger train hereinafter mentioned;
that plaintiff's husband had purchased a ticket at the
station of Easton, Missouri, on the line of defendant
railway, entitling him to ride from said station to St.
Joseph, Missouri; that when the passenger train ar-
rived at Easton, and before plaintiff's husband had
time to board said train in safety, Phelan the conduc-
tor carelessly and negligently signalled said train to
move knowing that plaintiff's husband was in the act
of boarding said train, and knowing, or by the exer-
cise of ordinary care could have known, that said hus-
band was in a place of danger; that such careless and
negligent signal was given and the train caused to
start while there was a large freight truck standing
within six inches of the edge of the said depot platform
and very near to the side of the coach of the said train,
and near the baggage coach of said train ahead, and
in front of the passenger coach of the train, and of
the place where passengers were received on said
train, and, at the time the said conductor caused the

said train to move, the depot master at said place, had not had time to unload all of the freight from said truck into the baggage car of said train and remove said truck from its said position near and adjacent to the side of the said train and that the depot master had just moved the last piece of freight into the door of said baggage car, and was still standing on top of the said truck and had not had time to move the said truck, when the said conductor caused the said train to start, and that the position of the said truck on the said platform was such as to render it dangerous for passengers boarding said train; that while said husband was standing on the lower step of the said passenger coach holding to the handrail thereof, the conductor, standing on the depot platform, called to him in a loud tone of voice to get off, and took hold of him and pulled him backward causing his body to sway backward off the steps of said coach and preventing him from going up the steps of said coach and inside the train; that said conductor then pushed plaintiff's husband forward into the steps of said coach causing his body to sway forward and backward while in the aforesaid position and, in so doing, her husband's body struck the end of the truck whereby he was caused to lose his balance and fall to the ground between the depot platform and the train where he was crushed and instantly killed; all by the joint carelessness and negligence of the defendants.

The defendant railway filed its petition and bond to have the cause removed to the Federal court, and the circuit judge sustained the petition and ordered the case removed. Thereupon plaintiff brought *certiorari* in the Supreme Court of Missouri, which court held that the court erred in ordering the removal and quashed said order. [State ex rel. v. Mosman, 231 Mo. 474, l. c. 493.]

Thereafter, on the 14th of February, 1910, defendants appeared in the circuit court, and the cause was tried. The defense was that deceased met his death as the result solely of his own negligence in attempting to board said train while in motion and in failing to use ordinary care to look out for his own safety and in neglecting to board said train while it was standing still.

Two witnesses testified in plaintiff's behalf as to how the death occurred, and their testimony tended to sustain the allegations of the petition. One of these witnesses was a man by the name of Rise who swore that he was present and saw deceased board the train; that witness was at the station to look for a car in which to ship a load of apples; that he got to the station just as the train stopped; that he, witness, stopped at the west end of the depot, and deceased walked over to take the train to St. Joseph; that deceased "came out of the baggage room to take the train and got on the train, and the conductor says to Iba, he says, 'You are not going to ride on this train,' and somebody, I don't just exactly know who it was, told him, he says, 'Why not, the man has got a ticket,' and the conductor grabbed Mr. Iba and says, 'You are not going to ride on this train,' and at the same time when he grabbed him he saw the danger he was in, and tried to shove him back on the platform, but the truck struck his right shoulder and whirled him around, and the other handle or bar struck him and knocked him down, and when I saw him fall why I just went up the street." He further testified that when deceased boarded the train, to the best of his knowledge, it was standing; that deceased was standing with both feet on the platform of the car and his left hand holding to the guardrail and he was just in the act of taking hold with his right when the conductor said, "You are not going to ride on this train;" that when the con-

ductor gave the signal to start, Mr. Iba was standing with both feet on the bottom step of the car platform.

The evidence of defendants tended to contradict that of plaintiff. Some half dozen or more witnesses testified to the effect that the train was moving when deceased came out of the depot and attempted to board it. The conductor, Phelan, testified that "the train had started and had gone a distance of about fifteen feet when deceased attempted to board it;" that, "he did not have hold of the first handhold of the coach at all; he was making an effort of hopping on one foot— sometimes he looked like he was down between the platform, and sometimes on the platform making an effort with his foot to get on, and when I saw that I hollowed at him. I said, 'For God's sake, don't get on that way,' and the next thought was to grab him, and I made an attempt to grab him. Well, he was coming to me so fast, and I started so fast that we pretty near missed, but I just did grab him by the right arm and back, but I did not get no hold of him at all, and he went by, and before I could grab again he had done passed me."

At the close of all the testimony the defendant railroad company called the trial court's attention to the petition and bond for removal and asked that the cause be ordered removed to the Federal court. This was denied. The jury returned a verdict of $5000. Defendants appealed. Within four days from the return of the verdict, defendants filed motions for new trial and in arrest, same being filed February 18th. The eleventh ground for a new trial specified in the motion was that "the verdict is against the weight of the evidence." At the same term and while the motion for new trial was pending, but after the expiration of four days from the verdict, to-wit, on April 16, 1910, defendants, in support of said motion, introduced the affidavits of eight witnesses, whose statements are to the effect that Albert Rise, one of plain-

tiff's witnesses, whose testimony we have hereinabove
stated, was not present at the time when and at the
place where the deceased was killed but was out in
the country at an orchard. Between the filing of the
motion for new trial and the final action thereon by
the trial court, Rise was indicted by the grand jury
for perjury charged to have been committed in giv-
ing his testimony in this case, and was tried and ac-
quitted in another court. The trial court in this pres-
ent case overruled the motion for new trial and, dur-
ing the announcement of the court's views and ruling
on the said motion, the following took place:

"Mr. Phillip: I would like for your Honor to let
the record show the remarks your Honor made in
overruling defendants' motion for new trial.

The Court: You want to get this whole thing
before the Court of Appeals, and let them say, and I
would be glad for them to do it.

"Mr. Crow: Then your Honor can write out
your Honor's views on this question, and I will agree
to have it made a part of the bill of exceptions.

"Mr. Phillip: I would like for your Honor to
state it. That your Honor says, that you felt a new
trial in this case ought to be granted, but you felt that
under the legal rule you were not permitted to grant it;
that is the substance of it.

"The Court: That approaches what I said.
What I tried to say was this: That in the original
trial of this Iba case, if the decision of the case had
been left to me, I would have decided for the defend-
ants, but when the case was ended, I did not feel that
the preponderance of the evidence was so greatly in
favor of the defendants as to warrant me in sitting
the verdict aside. Afterwards, these affidavits were
filed against Rise, and that threw such a suspicion in
my mind against his testimony, that I felt constrained
then to set the verdict aside. Afterwards Rise was
indicted and tried in the criminal court and acquitted.

Then I felt that I ought to respect the verdict of that jury and sustain the verdict of this jury, and I felt constrained to that, by my respect for the machinery of courts and trials. Then if I shut this out, if I shut the right of these two juries out and get back to my own conclusions, weighing Rise's testimony as affected by the suspicions that had been thrown in my mind and everything that I had learned about the case, then I would still conclude that the verdict ought to be set aside, but I feel that I ought to defer and that I am outweighed and overruled by the verdict of this jury and the conclusion of the jury in the criminal court.

"Mr. Phillip: And in substance, that personally, the court feels that the verdict ought to be set aside, but you don't think you ought to set it aside in view of the two verdicts returned, one in the criminal court, an one here?

"The Court: Yes, sir; that is it. Now if they can give us any light on that it may help out some other time."

Three main contentions are made by appellants. First, that "the order removing the cause to the Federal court not having been set aside by the trial court, it had no jurisdiction to try the case." There was no need for the trial court to set aside the order of removal, since the Supreme Court performed that task more effectually than any order of the trial court could have done. [State ex rel. v. Mossman, supra.] In that case the order of removal was quashed. A kindred point made is that as the defendants were not parties to the Mossman case, the decision of the Supreme Court is not *res adjudicata* as to them. Consequently it is urged that we should hold that the controversy herein is separable in that the defendant company is liable, if at all, under section 5425, Revised Statutes of Missouri, 1909, and the defendant Phelan is liable, if at all, under section 5426 of said statutes, and therefore, by reason of the diversity of citizen-

ship, the defendant railroad company had the right to remove the cause to the Federal court. But the Supreme Court holds in the Mossman case, supra, that both defendants are liable under section 5426, and that, therefore, the cause is not removable. Whether it is *res adjudicata* as to defendants or not, it is a decision on the law governing the case which we are bound to follow.

The second complaint of appellants is as to plaintiff's instruction No. 1. In effect it required the jury, before plaintiff could recover, to find that Iba *safely* boarded the train and that "after deceased *safely* boarded the train," defendant Phelan carelessly and negligently, while the train of the defendant company was in motion, took hold of, pulled and pushed deceased and thereby caused his body to strike the truck and knock him under the train. The contention is that the petition does not allege that Iba had *safely* boarded the train but that on the contrary it alleges that he was in a place of *danger* at the time the conductor signalled the train to start and that the conductor caused said train to start before Iba had time to board said train in safety. We do not think the petition alleges that the deceased was in a place of danger so far as *merely boarding the train* was concerned, or while he was on the steps of the car untouched by any one, but only that it became a dangerous place for plaintiff when the conductor took hold of him and attempted to pull him off. The petition does not allege that the starting of the train caused the injury. On the contrary it asserts, and plaintiff tried her case on the theory, that deceased had gotten safely on the lower step of the car while it was standing still, and was consequently in a position of safety and was in the act of going on up into the car when the conductor started the train and took hold of him. The objection that the instruction is opposed to defendant's instruction 8 is untenable, not because the objection

is not true, but because plaintiff's instruction merely presents to the jury her theory of the case while defendant's instruction presents the opposite theory. Thus the jury is left to say which theory is according to the facts, and this is proper.

The third and last contention made by appellants is the most serious and important one in the case. Over it two rehearings have been granted, a number of oral arguments have been made and many briefs *pro* and *con* submitted. These rehearings were graned before the writer came upon this bench.

This last contention, briefly stated, is that the court had no right to overrule the motion for new trial *when he was of the opinion that the verdict was against the weight of the evidence.* Or, to state it in another way, the trial court, *believing that the verdict was against the weight of the evidence, and that the testimony of Rise in support of it was perjured,* had no right to lay aside his views and the judgment of his mind on that matter, and overrule the motion for new trial out of deference to the verdict of the jury in the damage suit and the conclusion of the jury in the perjury trial. In short, the contention of defendants is that *the court announced that in his opinion a new trial should be granted,* but he felt he had no right to exercise his own judgment.

From an early period in English jurisprudence, the power and *duty* of the judge to grant a new trial where the verdict is against the weight of the evidence has always been recognized. [3 Blackstone, 387.] The trial court has the right, in either a law or an equity case, to grant a new trial if it is satisfied that the verdict or finding is against the weight of the evidence. And where the chancellor is satisfied, on a reconsideration, that the finding and decree were wrong he should grant a new trial. [Hurley v. Kennally, 186 Mo. 225.] Where the trial court is of the opinion that the verdict is not supported by the evidence, or

is against the weight of evidence, it should never hesitate in exercising the power and giving the aggrieved party a new trial. [Reid v. Piedmont Ins. Co., 58 Mo. 421, l. c. 430.] "It is not only the right but the duty of circuit courts to supervise the verdicts of juries and grant new trials, if the verdict is, *in their opinion*, against the weight of the evidence." [Bank v. Wood, 124 Mo. 72, l. c. 76.] Our courts also hold that the trial judge has inherent power to grant a new trial for good cause independent of the grounds set out in the motion for new trial. [Stannard Milling Co. v. Transit Co., 122 Mo. 258, l. c. 270.] Nor is the court confined to the grounds enumerated in the statute. [Leahy v. Dugdale, 41 Mo. 517.] "A trial court has the undoubted authority at any time during the term at which a judgment was rendered, if the trial judge believes a fair trial has not been had, or for any cause there has been a failure of justice, to set aside the judgment and grant a new trial, of its own motion, or on motion for new trial. [Scott v. Smith, 133 Mo. 513; Ensor v. Smith, 57 Mo. App. 585; Wight v. Railroad, 20 Mo. App. 481.] And it may set aside a judgment for cause and grant a new trial, even though the motion was filed out of time, if done before the adjournment of the term at which the judgment was rendered. [Nelson v. Ghislin, 17 Mo. App. 663; McLaran v. Wilhelm, 50 Mo. App. 658; Anderson v. Perkins, 52 Mo. App. 527; Martin v. Tobacco Company, 53 Mo. App. 655.]"

All this is well settled and, in fact, is not disputed. But it is insisted that the granting or refusing of a new trial is within the sound discretion of the trial court and, therefore, the appellate court has no right to review the action of the lower court in overruling the motion, especially where the suggestions in support of the motion for new trial were filed outside of the four days allowed for filing such motion. But this insistence assumes that the trial

judge *exercised* his sound discretion. That is the vital point in the question now before us. Did the court *exercise his own judgment and sound discretion, or not?* If the court, after hearing the motion for new trial and the affidivits tending to show perjury, exercised his own judgment and sound judicial discretion and, *in the exercise thereof,* overruled the motion for new trial, then there would be great force in the contention that the appellate court has no power to review such exercise. But that is not the question here. Appellants say that the trial judge *expressed his conviction that the verdict ought not to stand* but because another jury, in some other court and in a criminal case, found the witness not guilty of perjury, he would not exercise his own judgment in the matter, but would overrule the motion for new trial. Is this true? If so, has the appellate court the power to review the action of the lower court in that event? We will take up the last of these two questions first.

In Kansas Pac. Ry. v. Kunkel, 17 Kansas, 1, Justice BREWER, afterwards a distinguished member of the United States Supreme Court, said that the trial judge ''has the same opportunity as the jury for forming a just estimate of the credence to be placed in the various witnesses, and if it appears to him that the jury have found against the weight of the evidence it is his *imperative duty* to set the verdict aside. [Johnson v. Leggett, 28 Kan. 422; Williams v. Townsend, 15 Kan. 424.] We do not mean that he is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere doubts of its correctness. But when

*his judgment tells him it is wrong,* that whether from
mistake, or prejudice, or other cause, the jury have
erred, and found against the fair preponderance of
the evidence, then no duty is more imperative than
that of setting aside the verdict, and remanding the
question to another jury.''

In Dickey v. Davis, 39 Cal. 565, it is said: ''If
the judge is not satisfied with the verdict, and is con-
vinced that it is clearly against the weight of the evi-
dence, it is his duty to set it aside, even though there
may have been some conflict in the testimony.''

In Kansas City Ry. Co. v. Regan, 49 Kan. 1, the
court say: ''When the judgment of the trial judge
tells him the verdict is wrong, whether from mistake,
or prejudice, or other cause, no duty is more impera-
tive than that of setting it aside, and remanding the
questions at issue to another jury. While the case is
before the jury for their consideration, the jury are
the exclusive judges of all questions of fact; but when
the matter comes before the court upon a motion for
a new trial, it then becomes the duty of the trial judge
to determine whether the verdict is erroneous. He
must be controlled *by his own judgment,* and not by
that of the jury. . . . He has no right 'to stand
out of the way' and against his judgment overrule
such a motion. He must approve or disapprove the
verdict. If he approves, he may overrule the motion
for a new trial; if he disapproves, he should set it
aside and permit another jury to pass upon the facts.''
In this case the court held that as it had the knowledge
from the record that the trial judge did not approve
the verdict, although he refused a new trial, the Su-
preme Court, having that knowledge, will not hesi-
tate to reverse the judgment and grant a new trial.

In Miller v. Dumon, 24 Wash. 648, it is said:
''Generally, where the record discloses that the trial
court has expressed the opinion that the verdict is not
sustained by the evidence, or is contrary to the weight

of the evidence, and refuses to grant a new trial, the appellate court will reverse the judgment for an abuse of discretion.''

In State v. Billings, 81 Iowa, 99, the trial court refused to set aside the verdict, but the record on appeal disclosed that he was of the opinion that it was contrary to the weight of the evidence, and the appellate court held that, therefore, he should have granted a new trial, and having failed to do so, the judgment should be reversed, independent of the views of the Supreme Court on the sufficiency of the evidence to sustain the verdict.

In Felton v. Spiro, 78 Fed. 576, a case where the record showed that the trial judge did not exercise his judgment and discretion in passing on the motion for new trial, the case was reversed and remanded for that reason.

In Serles v. Serles, 35 Oregon, 289, the trial court refused to exercise his judgment on the question whether the verdict was against the weight of the evidence, and overruled the motion on the ground that as there was *some* evidence to support the verdict he had no power to grant a new trial. The Supreme Court held this to be erroneous; that the trial court *must himself pass on the question;* that a party is entitled to have his motion for a new trial, for insufficiency of the evidence to justify the verdict or other decision passed upon in pursuance of correct principles of law, and the trial court, having seen the witnesses and observed their manner, must act entirely upon its own judgment in passing on the motion. Accordingly the case was remanded. [See also Clark v. Great Northern Ry., 37 Wash. 537; 2 Am. & Eng. Ann. Cases, 760.]

In the case of Dean v. Fire Assn., 65 Mo. App. 209, the trial court declared, when passing on the motion for new trial, that the verdict was against the weight of the evidence, *but acting on the erroneous*

*view* that he ought not to grant a new trial where there was a *scintilla* of evidence to support the verdict and also that the statute forbade more than one new trial, *overruled the motion.* The appellate court, however, held that the trial court *had declined to exercise its discretion* to set aside the verdict and had *misconceived its duty* and therefore, reversed and remanded the case for a new trial. [L. c. 215.]

The foregoing authorities are not all that could be cited but they are ample to support the view that *if it appears from the record* that the trial court *has refused to exercise or follow his judgment* in passing on the motion for new trial, or that he has overruled the same *notwithstanding his judgment tells him the verdict should not stand,* the appellate court has the power to review such action.

Next comes the question first above propounded, did the trial court in this case *exercise his own judgment* in passing on the motion for new trial, or did he defer to the jury's verdict of acquittal in the criminal case, over which he did not preside and about which he knew nothing except that there was an acquittal? This question can only be answered by referring to the judge's language preserved in the record. It is hereinbefore set out in full but a synopsis of it is here repeated:

"Mr. Phillip: Your Honor says that *you felt a new trial in this case ought to be granted,* but you felt that under the legal rule you were not permitted to grant it.

"The Court: *That approaches what I said.* What I tried to say was this: That in the original trial of this Iba case, if the decision of the case had been left to me, I would have decided for the defendants, but *when the case was ended* I did not feel that the preponderance of the evidence was *so greatly* in favor of the *defendants,* as to warrant me in setting the verdict aside. *Afterwards,* these affidavits were

filed against Rise, and that threw such a suspicion in my mind against his testimony, *that I felt constrained then to set the verdict aside.* Afterwards Rise was indicted tried in the criminal court and acquitted. *Then I felt I ought to respect the verdict of that jury . . .* and I felt constrained to that, *by my respect for the machinery of courts and trials.* Then, if I shut this out . . . and *get back to my own conclusions,* weighing Rise's testimony as affected by the suspicions that had been thrown in my mind and everything that I had learned about the case, *then I would still conclude that the verdict ought to be set aside,* but I feel that I ought to *defer* and that I am *outweighed* and *overruled* by the verdict of this jury *and the conclusion of the jury in the criminal court.*

"Mr. Phillip: And in substance, that personally, *the court feels that the verdict ought to be set aside.* . . .

"The Court: *Yes, sir; that is it.*"

To put it in another way, the court says: "If this case had been left to me I would have decided it the other way, and when the case was ended, I felt that the *preponderance of the evidence* was with the *defendants* but it was not so *greatly* in their favor as to warrant me in setting the verdict aside. I felt this way even *before* I knew that one of the witnesses was charged with perjury. *Afterwards* when these affidavits were filed, *I felt constrained then to set the verdict aside.* But I learn that Rise has been acquitted of perjury by a jury in the criminal court and I feel that *I ought to respect the verdict of that jury,* and I feel that way *because of my respect for the machinery of courts and trials,* not because my views as to the weight of the evidence have changed. In fact, when I shut out the acquittal of this other jury *and get back to my own conclusions,* weighing Rise's testimony and knowing what I do about the case tried before me, *I still conclude that the verdict ought to be*

*set aside,* but I will not do so out of regard for the trial in the criminal court.''

Undoubtedly the trial court was not exercising *his judgment* on the question before him nor following the opinion and conviction *he* had formed in his own mind when he overruled the motion. On the contrary he was of the opinion that the verdict should be set aside, but, acting on the erroneous view that he should defer to the conclusion reached by another jury in a trial over which he did not preside, and the evidence of which he did not hear, and about which he knew nothing, he overruled the motion. In other words, he *abdicated* his place and function in favor of the jury in the criminal case. This was error.

The point is made that because the affidavits tending to show perjury were filed after the lapse of four days, therefore, the appellate court cannot review the trial court's action in overruling the motion. The question as to what power we would have to review the action of the trial court in *refusing to consider* matters arising after the lapse of four days is not in this case. Here the motion was filed in time and one of the grounds it contained was that the verdict was against the weight of the evidence. The affidavits of perjury were not submitted as a *statutory* ground for new trial under section 2022, but to support the claim that the verdict was against the weight of the evidence. And the trial court *did not refuse to consider* such suggestions but *did* take them into consideration, and *was of the opinion that a new trial should be granted* but, acting on an *erroneous view* as to what he should be governed by, refused to grant the new trial. Whenever a lower court has *sustained* a motion for a new trial under an alleged erroneous view, the appellate court has never hestitated to review its action and to reverse or sustain such action according to whether the trial court's view of what he should be goverend by was correct or not. Why

should the power to review be lodged in the appellate court in one case and denied in the other? Of course there is good reason for the rule that the trial court's judgment as to the weight of the evidence should not be disturbed by an appellate court, and also for the rule that if he does not take into consideration matters arising after the lapse of four days or does not give them the weight that he should, still the appellate court will not interfere with his judgment since it is a matter within his discretion and he has exercised his sound legal discretion and reached a conclusion on the matter before him *based on his own judgment.* But where the trial court *does* take into consideration such matters arising outside of the four days and within the term, and gives them such weight, in connection with what he already knows of the case, as that he is convinced that *a new trial should be granted,* yet, owing to a mistaken view of the rule by which he should be governed, he will not follow his own judgment, there is no reason why his action should not be reviewed in the appellate court. And the authorities so hold.

The trial court's view that there was doubt about the sufficiency of the evidence even before he learned of the charge of perjury was apparently well founded or at least was not unjustified. The distinguished former member of this court who wrote the opinion in this case on its first hearing, Judge BROADDUS (himself an exceedingly able trial judge of many years experience) stated in said opinion: ''There can be little doubt but what Rise did commit perjury, and we think outside of the affidavits filed his evidence on its face shows that he was not testifying to the truth.'' Evidently this was an impartial and unbiased view of the witness's testimony, since Judge BROADDUS was in favor of affirming the judgment on the ground that the appellate court could not review the trial court's action.

However, it is not meant to convey the idea that this case is reversed and remanded because we have weighed the testimony and are of the opinion that Rise was not there, or that we do not believe the conductor would attempt to pull a man off who was standing safely on the steps of the car with a ticket entitling him to ride, or that the physical facts testified to by plaintiff's witnesses show that the train was in motion when the deceased stepped on, notwithstanding their statement that it was standing still. We have not attempted to weigh the testimony, and will not do so. This paragraph is inserted, not to show our conclusion as to what the real facts were, but solely for the purpose of saying that the trial court's opinion that a new trial should be granted was well founded and not a whimsical fancy or an opinion with nothing substantial to support it.

The conclusion reached in this opinion is not based on any view of ours as to what the testimony shows. It is put solely on the ground that *the record shows the trial court was convinced a new trial* should be granted and also shows that *he did not follow his own judgment* but erroneously took the view that he should be governed by the action of the jury in the criminal court. This was error. He had no legal right to substitute the judgment of that jury for his own judgment. The matter before him was one question, the one before the jury was an entirely different question. The parties were different, the issue was different, and the amount, quality and quantity of evidence required by the law were different.

As the trial court had the opinion that a new trial should be granted but did not follow that opinion on acount of an erroneous view entertained by him, his action is, for that reason reviewable by the appellate court; and the new trial which he should have granted in obedience to his judgment, is

awarded. Reversed and remanded. *Ellison, P. J.*. concurs; *Johnson, J.,* dissents.

## ON MOTION FOR REHEARING.

TRIMBLE, J.—Counsel for respondent, in their motion for rehearing, contend, with apparent sincerity and much heat, that the appellate court cannot lawfully consider the statements and reasons given by the trial judge, at the time the motion for new trial was passed on, because said statements are no part of the record. The statements of the trial judge in this case were taken down by the stenographer at the time and were duly incorporated in the bill of exceptions and appear in full in the printed abstract of record upon which the case was submitted to us. Passing by the question whether or not this was sufficient to make said statements a part of the record, it may be well to remind counsel of the fact (which they seem to have overlooked or forgotten), that the statements were made a part of the record *by express agreement and stipulation* on the part of counsel who now complain. The trial court, in overruling the motion for new trial, anounced his view of the case and of the question then before him, and the record shows the following occurred:

"Mr. Phillip: I would like for your Honor to let the record show the remarks your Honor made in overruling defendant's motion for a new trial.

"The Court: You want to get this whole thing before the court of appeals and let them say, *and I would be glad for them to do it.*

"Mr. Crow: Then your Honor can write out your Honor's view of this question and *I will agree to have it made a part of the bill of exceptions.*"

In view of the above agreement it is difficult to see how this court could hold that the statements were

no part of the record, even had timely objections thereto been made either in brief or in oral argument.

Motions for rehearing are given careful and patient consideration. It is suggested that, in drawing them, it is unnecessary to use extravagant, hasty or intemperate language in describing or adverting to the views of the court or its ruling on different points. Language of this character does not add to the force of such motions. Its employment may perhaps serve a useful purpose in "letting off steam" when counsel is irritated and disappointed. But, after this purpose has been accomplished, it is better to destroy them and rewrite the motion, leaving such expressions out, thus consigning them to oblivion where they will soon be forgotten. Motion for rehearing is overruled. *Ellison, P. J.*, concurs. *Johnson, J.*, having dissented from the original opinion, thinks a rehearing should be granted, but concurs in what is said concerning objectionable language used in motions for rehearing.