STATE OF MISSOURI AT THE RELATION AND TO THE USE OF B. H. PIEPMEIER, STATE HIGHWAY ENGINEER OF THE STATE OF MISSOURI, APPELLANT V. CORA M. CAMREN AND ERNEST CAMREN, RESPONDENTS.

St. Louis Court of Appeals. Opinion filed September 15, 1931.

*John W. Mather* and *Jean Paul Bradshaw* for appellant.

*Spradling & Dalton* for respondents.

BENNICK, C.—This is a condemnation proceeding which was instituted at the instance of the State Highway Commission in the Circuit Court of Bollinger County, the purpose of the action having been to acquire certain lands belonging to defendants, Cora M. Camren and Ernest Camren, for use as a right of way for State Highway No. 51, a hard-surfaced, gravel road, extending from Patton southwardly through Marble Hill. Commissioners were appointed by the court, and in due course their report was filed, awarding to defendants the sum of $75 as damages. Exceptions to the report were filed by defendants, and the case eventually taken on change of venue to the Cape Girardeau Court of Common Pleas, where, upon a trial to a jury, a verdict was returned in favor of defendants, assessing their damages at the sum of $1,080. Judgment was entered accordingly, from which plaintiff appealed to the Supreme Court, evidently upon the theory that title to real estate was involved; but following its ruling in Missouri Power & Light Co. v. Creed (Mo. Sup.), 30 S. W. (2d) 605, that court found that jurisdiction was vested in us, and consequently ordered the cause to be transferred here. State ex rel. Piepmeier v. Camren (Mo. Sup.), 33 S. W. (2d) 913.

Defendants' farm consisted in its entirety of some one hundred thirty acres, and was located approximately four miles north of Marble Hill, along the line of the proposed highway. It had been acquired by defendants in 1917 at a cost of $1,000, and thereafter they made certain improvements upon it until at the time when condemnation proceedings were begun, its market value was estimated by them to have been as much as $3,000.

The old Patton-Marble Hill county road had crossed the farm from north to south, while the new highway crossed it from east to west, leaving the farm divided into four tracts, three of them containing, roughly, twenty-five acres each, and the fourth, about fifty-five acres. The right of way for the highway, which was sixty feet in width, extended across the farm for a distance of one hundred twenty-five rods, and all told required the absolute taking of three acres of land.

The evidence showed that the highway was constructed along a ridge, and that the improvements placed upon the farm by defendants were situated on the land lying some distance beneath. Defendants complained that the drainage of the new road turned the water down across their fields, and overflowed the well; that the water was also caused to drain down upon the old road, which passed directly by their buildings, leaving it rough and inconvenient to get over, and thereby rendering the new highway inaccessible to them; that crossing the new highway with live stock caused them considerable inconvenience; that two hundred fifty rods of additional fencing were required, at a cost of $1.35 to $1.50 a rod; that the manner in which the farm had been subdivided largely destroyed its sale value; and that they had received no special and peculiar benefits from the construction of the new road.

According to the testimony of defendants and their witnesses, the net damage done to the farm ranged all the way from $800 to $2,200.

The evidence for plaintiff was that the land was only worth from $5 to $10 an acre; that defendants were not damaged in excess of the value of the land actually taken for a right of way, together with the cost of necessary fencing; and, in fact, that they had been specially benefited, in that the market value of the farm as a whole had been materially increased by the construction of the new highway across it, which afforded defendants better means of ingress and egress than they had theretofore enjoyed, at least towards the east and the west.

Plaintiff complains on this appeal of the giving and refusal of instructions, and of the excessiveness of the verdict.

The present opinion comes as the second one in the case. In our former opinion, after the first submission of the case, we expressed the view that one of the instructions given for defendants contained reversible error, the same purporting to define the special benefits which might be deducted from the whole of the damages in computing the amount of the award. The case was again argued and considered on rehearing; and while we are still of the opinion that the particular instruction was indeed erroneous, in so far as it restricted special damages to those "which are not enjoyed by other

lands in the same neighborhood''—thus excluding from the consideration of the jury such special benefits, if any, as were shared in kind by other land similarly situated, though short of all the land in the same neighborhood—we are now convinced that a reversal would be unwarranted on that account, either for the reason that defendants' instructions, when read as a whole, might fairly be said to have cured the error, or else for the reason that the error was mutual to both the parties. We mention the above in fairness to counsel, so that they may be advised of the considerations which have cast grave doubt upon the propriety of our former position; and now, with the issue of the instruction out of the way, we are brought to the question of the excessiveness of the verdict, or, more accurately stated, to the question of whether or not the learned trial judge, in overruling the motion for a new trial in which the issue of excessiveness was duly raised, was precluded through a misconception of the law of the case from exercising his true discretion in the matter.

The abstract shows that at page 74 of record ''Q'' of the lower court is to be found the following order, taking somewhat the form of a memorandum opinion, which was entered at the time plaintiff's motion for a new trial was taken up and overruled.

''The motion for a new trial in this cause is now taken up, counsel on both sides having furnished briefs which the court carefully examined, together with the transcript of the testimony, and the court finds that from the evidence, considering the demeanor of the witnesses on the stand, the manner in which they testified, and taking into consideration the court's personal knowledge of the value, character, location of the land in question, and the general depreciation of all land values, the court is entirely satisfied and thoroughly convinced that the damages awarded in the case are excessive, and altogether beyond a compensation for actual loss sustained, but as the jury is the sole judge of the facts and the credibility of witnesses, and the Supreme Court has said that the trial court cannot grant a new trial on the grounds of an excessive verdict, unless the 'result reached shocks the understanding and cannot be fairly justified on any hypothesis except misconduct or prejudice or willful disregard of instructions,' and 'not until the result of deliberation of the jury appears in a form calculated to shock the understanding and impress no dubious conviction of their prejudice and passion,' or a total disregard of the evidence. While this court feels that the ends of the administration of justice would be best subserved by a retrial of this case, yet under the rulings of the Supreme Court, and this being a condemnation suit, this court feels compelled to overrule the motion for a new trial. The motion for a new trial is therefore overruled, and judgment is ordered entered in favor of the exceptors, and against the plaintiff, in the sum of $1,080,

less $75 awarded by the commissioners and already paid, making a net amount of $1005."

Now there is no doubt that the question of the excessiveness of the award, as the same was brought to the attention of the trial judge on motion for a new trial, was one which addressed itself to his sound discretion; and it is accepted doctrine that appellate courts are extremely loath to disturb the action taken by the trial judge, when once it appears that he has actually exercised that power. However, it must be borne in mind that discretionary rulings of the trial court, while largely persuasive, are in nowise conclusive, upon the appellate court, since the ultimate responsibility for every judgment rests upon the court of last resort to which the case is taken; and consequently the appellate court is duty bound to approve or reject all rulings of the trial court in the progress of a cause, even when made in the exercise of a judicial discretion, the test on appeal being whether such discretionary power was soundly exercised or abused. Here the point arises upon the trial court's refusal to have granted a new trial upon a particular ground assigned in the motion, and the sound exercise of its discretion is none the less reviewable because it happens to have been clothed in that fashion. [McCullough v. The Phoenix Insurance Co., 113 Mo. 606, 21 S. W. 207; Nordmanser v. Hitchcock, 40 Mo. 178; Valois v. Warner, 1 Mo. 730; Lewis v. Frankle, 158 Mo. App. 262, 138 S. W. 64.]

Obviously the question of what the court's discretion prompted it to do in the instance before us is to be ascertained, if at all, by recourse to so much of its order refusing a new trial as took the form of a memorandum opinion. It therefore becomes necessary for us to determine at the outset whether we have the right to look to that opinion; and, if so, whether the same discloses that the court, through a misconception of the law, or for any other invalid reason, was prevented from giving exercise to its true discretion in the matter.

We would hesitate to attempt to announce a rule by which one could determine whether a memorandum opinion filed by the trial court had legal potency, and was subject to appellate notice, in every instance. The preparation and filing of such opinions is invariably encouraged, and for some purposes, and under some circumstances, appellate courts consider them officially, and for other purposes, and under other circumstances, they deny themselves the right. Certainly, as a general proposition of law, the validity of the action of the trial court is to be determined on appeal by the validity of its orders as evidenced by record entries, and by its rulings to which exceptions were duly saved and preserved; and thus it is manifest that a written opinion of the trial court, simply filed among the papers in the case, cannot be availed of for the purpose of countervailing or impeaching its solemn finding or judg-

ment. This is usually said to be so because the filing of a memo-
randum opinion, briefly expressing the court's conclusions, is merely
a matter of option reposing with the judge himself, and not an act
required by law, and therefore the opinion becomes vested with no
legal efficacy or effect by reason of its inclusion in the files.

So far as concerns the granting of a new trial, the statute (Sec-
tion 1003, R. S. 1929) requires the court's order to specify of rec-
ord the ground or grounds on which the motion was sustained; and
consequently, if a memorandum opinion, prepared by the trial court
on sustaining the motion, is spread of record in the case, there is
no doubt about its legal sufficiency. [Hewitt v. Steele, 118 Mo.
463, 24 S. W. 440; Kreis v. Missouri Pacific R. Co., 131 Mo. 533,
33 S. W. 64, 1150; Clarkson v. Garvey, 179 Mo. App. 9, 161 S. W.
664.] Technically speaking, for the court merely to file its opin-
ion among the other papers in the case, instead of actually entering
it of record, will not satisfy the letter of the statute; but even then
the later cases say (at least if the opinion is preserved in the bill of
exceptions, and reference is made to it in the court's record entry),
that it may nevertheless be considered by the appellate court upon
the question of why the motion was sustained, as throwing light
upon the view the court took of the case during its progress, and
at the time it passed upon the motion for a new trial. [Hays v.
Hogan, 273 Mo. 1, 200 S. W. 286; Kersten v. Hines, 283 Mo. 623,
223 S. W. 589; Manthey v. Kellerman Contracting Co., 311 Mo.
147, 277 S. W. 927.]

However, notwithstanding the fact that the statute only requires
the court to specify of record the ground or grounds upon which
a new trial is granted, and not the court's reasons for the refusal
of the same, it does not follow that the appellate court may not
look to a memorandum opinion filed by the trial court in connec-
tion with an order overruling the motion. In any event it would
seem that as in the case of the grant of a new trial, where the re-
quirement of the statute is not strictly observed, the appellate court
should be permitted to have recourse to such an opinion, or to the
oral statements of the trial judge preserved in the record, to ascer-
tain the views which were held by him at the time he acted on the
motion. Indeed the authorities do so indicate, apparently accepting
the right as a matter of course, the rule seemingly being that if it
appears from the record that the trial judge has refused to exercise
his sound discretion in passing on the motion for a new trial, or
that he has overruled the same in spite of the fact that his judg-
ment told him the verdict should not be allowed to stand, then the
appellate court has the undoubted power to review his action. [State
ex rel. v. Ellison, 256 Mo. 644, 165 S. W. 369 (quashing Iba v.
Chicago, B. & Q. R. Co., 172 Mo. App. 141, 157 S. W. 675, but not
upon the ground that the Court of Appeals had no right to look

to the reasons assigned by the trial judge for overruling the motion) ; Dean v. Fire Association of Philadelphia, 65 Mo. App. 209, 215.]

In this instance the court emphatically stated the views it entertained about the size of the verdict, and the theory upon which it overruled the motion. Strictly speaking, however, it was not the usual memorandum opinion which it filed, for the whole thing was the order denying a new trial, which was duly and definitely spread of record in the case. Thus we have no question before us concerning our right to look merely to a memorandum opinion found among the court files, but we are rather faced with a solemn record entry, which it was the duty of the court to make when it overruled the motion, and regardless of the form which the court, in the exercise of its right to control its own records, saw fit for it to take. Consequently we are of the opinion that the entire contents of the order are properly before us, and that from the same the question of whether the lower court really and soundly exercised its discretion in the matter brought to its attention is subject to our review. .

Clearly the order overruling the motion is amenable to no construction other than that the trial judge, for his part, was fully persuaded that the damages allowed by the jury were excessive, and altogether beyond a compensation for actual loss sustained by the defendants, and that the ends of justice would be best subserved by a retrial of the case. He reached this conclusion from his own conception of the evidence adduced, considering the demeanor of the witnesses on the stand, and the manner in which they had testified. No one does, or can, question the right, and in fact the duty, of the court to have taken those vital matters into account in passing on the motion.

Of course the judge went further, and announced that he had also taken into consideration his personal knowledge of the value, character, and location of the land in question, and the general depreciation of all land values, but we do not think that this in anywise vitiated or lessened the force of the court's ultimate conclusion about what should be done in the case. He had already mentioned valid and legal matters of consideration, which, standing alone, would have amply warranted the grant of a new trial, and if the subsequent matters were improperly included, they may be treated as mere surplusage, and be disregarded. It must be borne in mind, however, that the judge did not substitute his own personal knowledge of the land in question, and of the general depreciation of all land values, for the evidence in the case, and thus attempt to give effect to his own arbitrary will and caprice, but rather he took those matters into consideration only in discharging his duty of determining where the weight of the evidence lay. In other words, the idea he undoubtedly meant to convey was that he had arrived at the

weight of the evidence in the exercise of his discretionary power, a power or privilege accorded him, to be exercised under the law, of deciding and acting in accordance with what he deemed to be fair, equitable, and wholesome, as determined upon the peculiar circum- stances of the case, and as discerned by his personal wisdom and experience. [Gaar-Scott & Co. v. Nelson, 166 Mo. App. 51, 65, 148 S. W. 417.]

Now the fact is that notwithstanding the court's firm conviction that the verdict was against the weight of the evidence upon the sole issue in the case, it overruled the motion upon the theory that it was precluded from interfering with the verdict because of its ex- cessiveness, unless the result reached shocked the understanding, could not be fairly justified on any hypothesis except misconduct or willful disregard of instructions, and appeared in a form calcu- lated to leave no doubt of the jury's passion and prejudice, or of their total disregard of the evidence. In other words, the court entertained the view that absent wilful misconduct or patent preju- dice of the jury, it was not enough to warrant the grant of a new trial that the verdict was merely against the weight of the evidence.

In this respect the court was in error, for while mistake, passion, and prejudice of the jury, along with many other matters, conced- edly constitute good grounds for the granting of a new trial, the court, in the exercise of its discretion, has the equal right and duty of granting a new trial where the verdict, in its judgment, is merely against the weight of the evidence, in that the damages awarded are either excessive or inadequate. [Sofian v. Douglas, 324 Mo. 258, 23 S. W. (2d) 126; Devine v. City of St. Louis, 257 Mo. 470, 165 S. W. 1014; Platt v. Cape Girardeau Bell Telephone Co. (Mo. App.), 12 S. W. (2d) 933; Wise v. Rubenstein (Mo. App.), 24 S. W. (2d) 203.] And it is not without its significance to add that to the extent that bias and prejudice of the jury support the action of the court in granting a new trial, the same may be inferred by the trial court, as distinguished from the appellate court, from the mere size of the verdict alone. [Sofian v. Douglas, supra.]

Nor does the fact that this is a condemnation suit have any bear- ing upon the court's right to have granted a new trial on account of the excessiveness of the verdict, though the court did mention the character of the action as seemingly taking the case from within the scope of the usual rules of practice. It is provided by Section 8111 (13), Revised Statutes 1929, that condemnation proceedings, such as this, shall be had in accordance, in so far as the same may be applicable, with the provisions of Article 2, Chapter 7, Revised Statutes 1929, relating to condemnation proceedings by corporations; and the procedure therein outlined is (Section 1344, R. S. 1929) that upon exceptions filed to the report of the commissioners, a new

appraisement shall be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages. Thus proceedings to condemn property to public use, upon the trial *de novo* to a jury, are triable and reviewable on the principles applicable to actions at law; and upon such a trial it is held that the trial court possesses the usual power to set aside the verdict of the jury as being either excessive or inadequate. [City of St. Louis v. Worthington (Mo. Sup.), 19 S. W. (2d) 1066; City of St. Louis v. Franklin, 324 Mo. 1212, 26 S. W. (2d) 954.]

We have found from the record in the case that the discretion of the trial court told it that the verdict was excessive, and against the weight of the evidence; that through a misconception of its power and duty, it was prevented from giving exercise to that discretion; and that under such circumstances the matter is one for our review.

It follows, therefore, that the judgment of the Cape Girardeau Court of Common Pleas should be reversed, and the cause remanded; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the Cape Girardeau Court of Common Pleas is, accordingly, reversed, and the cause remanded. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.