**Glen WOLF, Appellant,**

v.

**O. H. TOSPON and Edith Tospon, Executors of the Estate of Linnie Waggoner, Deceased, Respondents.**

No. 22420.

Kansas City Court of Appeals.

Missouri.

Nov. 5, 1956.

J. K. Owens, Kansas City, for appellant.

O. J. Adams, Kingston, R. B. Taylor, J. J. Shy, Chillicothe, for respondents.

BROADDUS, Judge.

Plaintiff, Glen Wolf, on November 4, 1954, filed in the Circuit Court of Caldwell County his "Petition on Account" in the amount of $5,158 against the Executors of the Estate of Linnie Waggoner, deceased, for services which he alleged were rendered deceased during the years 1941 to 1953, inclusive. Plaintiff was granted a change of venue to Livingston County where a verdict was rendered in his favor for $5,000. Defendants' motion for a new trial was sustained on the ground that the verdict was against the weight of the evidence. From that ruling, plaintiff appealed.

The deceased, Linnie Waggoner (the widow of William J. Waggoner, who died January 24, 1941) died testate February 13, 1954, at the age of 87 years, at the home of her sister, Edith Tospon, with whom she made her home, and where she was cared for by her sister for some three months preceding her death. Prior to that time the deceased resided at her farm home located about five miles southeast of Kingston, which had been her home for many years and where she lived alone after her husband's death.

Plaintiff, Glen Wolf, is the husband of Margaret Wolf, an adopted daughter of deceased. The services for which he claimed compensation consisted of the following: Transporting deceased from her farm home to the towns of Polo, Hamilton, Cowgill and Kingston, delivering groceries, doing chores, mowing the lawn and looking after the farm of the deceased, all at her request. The itemized statement attached to the petition shows a total of 834 trips. It lists the sum of $180 for "mowing lawn", and $50 for "looking after farm."

The chief witness for plaintiff was his wife, Margaret. She testified that she and her husband lived on a farm located about a half a mile south of Kingston; that plaintiff carried lots of coal; that deceased had two coal stoves, one heating stove and a cook stove; that she burned coal the year around in the cook stove; that he mowed the yard, took the power mower to Hamilton several times to have it fixed; that he would leave it and have to go back and get it; that he took the telephone to Hamilton several times to get it fixed; that he also took the radio there several times for the same purpose; that he fixed the corn crib, the fences and the roof on the house; that he "went around and hunted a renter for the farm"; that

"he sold the crops on the farm and went over the farm to see how the crops were getting along." As to the trips, she testified that a lot of them were made for the purpose of taking deceased "to town to get her groceries"; that they were taken "about twice a week and sometimes three", and in "later years mostly to Kingston."

She also testified that after Mr. Waggoner's death the deceased had no livestock on the farm—"just a few chickens."

The witness also testified that deceased had told plaintiff many times that he would be well paid for his work; that the only pay he had received was "two dollars * * * every time he mowed the yard."

Witness admitted that plaintiff was indebted to deceased at the time of her death for money which he had borrowed from her, evidenced by three promissory notes, one for $1,126, one for $325 and another for $125. No credits were shown on any of these notes, but the witness stated that $40 had been paid on one of them.

Several other witnesses, testifying on behalf of plaintiff, stated that they had seen him at the home of deceased on several occasions; that on some occasions he carried in some coal and did some odd jobs, delivered some groceries and chicken feed to deceased; that he took her places, and that a few times deceased called plaintiff over the phone when she was sick and requested him to render her some assistance.

Plaintiff-appellant in his brief says he recognizes "the rule in this State that a trial court has a great discretion in setting aside a judgment against the weight of the evidence, but such discretion must be judicially and not arbitrarily exercised, and that the higher court will not interfere therewith on appeal where there is substantial evidence to sustain the trial court's view." He then asserts: "In this case there is no evidence on the part of the respondents at all that the services were not agreed to be paid for and Linnie Waggoner

did not make the statement that he would be paid, and there is no evidence but what he did perform the services for which the jury rendered the verdict."

Many cases recite the reasons why it is the peculiar province of the trial court to pass upon the question of whether or not a verdict is against the weight of the evidence. No where are these reasons more clearly set forth than in the case of Littig v. Urbauer-Atwood Heating Co., 292 Mo. 226, 239, 237 S.W. 782.

In view of the statute, Section 510.330 RSMo 1949, V.A.M.S., some of our cases say: "The trial court has a right to grant one new trial to each party on the ground alone that the verdict is against the weight of the evidence, and since this was the first trial of the case, it was within the discretion of the trial court to grant plaintiff a new trial on the ground that the verdict is against the weight of the evidence." Riche v. City of St. Joseph, 326 Mo. 691, 32 S.W.2d 578, 579. (Citing cases.)

And says the case of State ex rel. and to Use of Piepmeier v. Camren, 226 Mo.App. 100, 41 S.W.2d 902, 906 the trial court "in the exercise of its discretion, has the equal right and duty of granting a new trial where the verdict, in its judgment, *is merely against the weight of the evidence, in that the damages awarded are* either *excessive* or inadequate." (Emphasis supplied.)

In the instant case, there was undoubtedly grave doubt in the trial court's mind as to whether plaintiff had, in fact, performed all the services for which he sought payment. While on the stand plaintiff's wife was asked this question: "The fact is that you are guessing and speculating about everything you have testified to haven't you, is that right? A. Yes."

The grocer in Kingston, and with whom Mrs. Waggoner traded during the years from 1941 to 1954, testified that "in the early years, I mean after Mr. Waggoner's death * * * she would order some

groceries occasionally, maybe once a month or once every two months, but not so often the last five or six years. She ran a regular account and ordered once a month;" that plaintiff "would pick up the groceries—usually run once a month and sometimes twice."

Mrs. Hartley, who lived in the same neighborhood of the Linnie Waggoner home, testified that deceased's sister and brother took her "to get groceries."

Virgil Williams, who lived within a quarter of a mile of the Waggoner home, testified that whenever Mrs. Waggoner would go from her farm to town or other places to visit, "someone would have to drive her"; that sometimes in the latter part of the period between 1941 and 1954, Mr. Wolf would take her and in "the first part of the period * * * some of the neighbors" would, and "Mr. Wolf occasionally." Mr. Williams also stated that if he and his family were going to Cowgill, Kingston or Hamilton "we would stop to see if she (Mrs. Waggoner) wanted something or wanted to go with us, just like any neighbor would"; that during the early part of the period from 1941 to 1954 she went with them "several times."

Edith Tospon, sister of deceased, while admitting that plaintiff took groceries to Mrs. Waggoner, testified that she and her brother John "did too, and the neighbors did"; that "our nephew Roe Parker, brought her groceries all that time a good many times."

The above witnesses were all placed upon the stand by the plaintiff. Without setting it out in detail, there is other evidence in the transcript which clearly tends to show that the court did not abuse its discretion in setting aside the verdict.

The order of the trial court granting a new trial is affirmed, and the cause remanded for retrial. All concur.