**Billie CALVIN (Plaintiff), Respondent,**

v.

**Jim LANE and Roy Abston (Defendants), Appellants.**

No. 22479.

Kansas City Court of Appeals, Missouri.

Jan. 7, 1957.

J. Arnot Hill, Kansas City (John C. Pohlmann, Kansas City, of counsel), for appellants.

Warren S. Earhart, Kansas City, for respondent.

CAVE, Judge.

This is an appeal from a verdict and judgment in favor of plaintiff and against both defendants in the sum of $1,000 actual and $500 punitive damages for personal injuries allegedly resulting from an assault and battery.

The petition alleged that the defendants were the owners and operators of a tavern located in Kansas City, and that on the 13th day of February, 1954, "the defendants wrongfully, wilfully, wantonly, unlawfully, maliciously, violently and brutally assaulted and beat plaintiff, trampled on her left foot and pushed her twice through a glass window or door and thereby wounded and injured plaintiff". The answer was, in effect, a general denial.

On appeal, defendants present but one point or alleged error, stated as follows: "The trial court abused its discretion in overruling defendants' motion for a new trial for the reason that plaintiff's case was founded on the perjury of plaintiff and the perjury of the witness Claude Hamon". We shall consider the evidence relating to this one issue.

Plaintiff testified that on the day in question, she and her husband and their

six year old son were seated at a table in defendants' tavern; that she and her husband each ordered "a beer", and orange juice for their son; that while they were there, an old lady, a Mrs. Passler, attempted to sell them some hosiery, and failing in that, asked plaintiff's husband to buy her a beer, which he did; that the old lady consumed that drink "real fast" and asked for another, whereupon plaintiff signalled to her husband not to buy another drink, and Mrs. Passler became angry and left the table. Shortly thereafter, the plaintiff went to the bar to get some change and Mrs. Passler took hold of her arm and called her vile names, and defendant Lane came from behind the bar and forcibly and violently ejected her from the tavern, and in doing so, crushed her left foot with his heel and pushed her through a glass door, and also struck her twice; that Lane's son, "Jimmy", knocked her down twice. She received certain injuries about which there is little dispute and need not be detailed. It also appears that her husband attempted to assist her in the disturbance and he was rather roughly handled by some men who were in the tavern. In general, the husband's testimony corroborated that of the plaintiff.

■ There is no conflict in the evidence that plaintiff was ejected from the tavern by defendant Lane and was injured. The conflict, upon which perjury is charged, relates to the cause of the ejection (whether plaintiff was intoxicated or not); whether plaintiff was pushed through a glass door and injured; and whether plaintiff's witness, Claude Hamon, was present during the disturbance.

Concerning the alleged perjury of the plaintiff, the defendants argue that the plaintiff denied, under oath, that she had been in another tavern immediately before coming to their tavern; that she had consumed more than a glass and a half of beer at the time of the incident; and that she was intoxicated. Defendants produced two witnesses who testified that plaintiff had been in another tavern immediately before going to defendants' tavern, and that the proprietor of the first tavern had requested her to leave because of a disturbance she created. A police officer, who arrived shortly after the defendants had ejected plaintiff, testified that she was intoxicated; was "yelling loud" and cursed him. The hospital records disclosed that when plaintiff was admitted to the hospital "she had an odor of alcohol at that time". There is also conflict in the evidence as to just what occurred between plaintiff and Mrs. Passler before the plaintiff was ejected. But from a reading of the record we are convinced that these conflicts raised an issue of fact to be determined by the jury.

However, defendants principally contend that plaintiff's witness, Claude Hamon, committed perjury, and that the court erred in not setting aside the verdict for that reason.

Hamon testified that he was in defendants' tavern at the time of the disturbance and corroborated plaintiff's evidence concerning the occurrences. He lived in an apartment above the tavern, and stated that on the day in question he was passing the tavern when he saw a friend, a man by the name of Clark (who was out of the state at time of trial), inside, and went in to talk with him and was doing so at the time of the disturbance. The defendants testified that they had forbidden Hamon to come into the tavern and that he was not present at the time in question. Hamon admitted that the defendants had refused to serve him drinks, but denied that he had been refused admission to the tavern. Defendants also produced three or four witnesses who testified that they were present at the time of the disturbance, and that Hamon was not in the tavern at that time. In support of the motion for new trial, defendants filed the affidavits of Maud Van Bebber, Charles Voyles and Emily Thompson, wherein they stated that Hamon was

not in the tavern at the time of the ejection. They also produced Stone Van Bebber, the husband of Maud Van Bebber, who testified that he was Hamon's brother-in-law and that Hamon was not in the tavern at the time in question. However, Mr. Earhart, attorney for the plaintiff, testified that prior to the trial he interviewed Mr. and Mrs. Van Bebber at their home with the view of using them as witnesses, and that they told him at that time "we were not in the tavern that afternoon".

■ Putting it mildly, it is perfectly apparent that some of the parties were quite mistaken or confused, or unfamiliar with the duty of testifying truthfully. But the primary responsibility of determining who is worthy of belief rests first upon the jury and secondly upon the trial court in passing upon a motion for new trial.

Section 510.330 RS1949, V.A.M.S., provides: "A new trial may be granted for any of the reasons for which new trials have heretofore been granted. * * *" 42 V.A.M.S. Supreme Court Rules, rule 3.22 provides that "The court may award a new trial of any issue upon good cause shown and in any case where there has been a failure of proof, * * * or the court is satisfied that perjury or mistake has been committed by a witness, and *is also satisfied* that an improper verdict or finding was occasioned by any such matters, * * *". This section and rule apparently give continuing effect to the provisions of Secs. 1125, 1167–1169, R.S.1939, which sections contain substantially the same provisions as are now included in Sec. 510.330 and Rule 3.22.

■ It is well established that when a motion for new trial alleges that the verdict is the result of perjury, the determination of such question is left to the sound discretion of the trial court, and it is only in cases in which the evidence clearly discloses that the trial court has abused its discretion that an appellate court is warranted in interfering with the judgment on this ground. The very language of the statute and rule set forth supra, clothed the trial judge with a wide discretion which is to be exercised by him in favor of granting a new trial when he *"is satisfied* that perjury or mistake has been committed by a witness, *and is also satisfied* that an improper verdict or finding was occasioned by any such matters". (Italics supplied.) Citizens Bank of Liberty v. Thompson, 234 Mo.App. 448, 132 S.W.2d 700, 705. See also, Seymour v. Tobin Quarries, 233 Mo.App. 573, 123 S.W.2d 628, 631; Gavin v. Forrest, 230 Mo.App. 662, 72 S.W.2d 177, 184; Callison v. Eads, Mo.App., 211 S.W. 715; Neal v. Kansas City Rys. Co., Mo., 229 S.W. 215; Thompson v. B. Nugent & Bro. D. G. Co., Mo.App., 17 S.W.2d 596.

The purpose of the above statute and rule is to clothe the trial judge with wide discretion to be exercised in furtherance of substantial justice because he enjoys the advantage of seeing and observing the witnesses while testifying, and is in a much better position to judge of their credibility than is an appellate court, which merely reads the cold record.

In the instant case the court gave, at the request of defendants, an instruction on credibility of witnesses which directed the jury that if they found, from consideration of all the evidence, that any witness had wilfully sworn falsely to any material fact in issue, then they were at liberty to disregard the whole or any part of such witness' testimony. Thus, if the jury disbelieved any part or all of witness Hamon's testimony, nevertheless there was substantial evidence from which the jury could find that the defendants had unlawfully and violently ejected plaintiff from their tavern, and in doing so had caused her injuries. There is no dispute that she was ejected and was injured.

In support of their contention, defendants cite, in addition to the section and rule and the Thompson case supra, the cases of State ex rel. and to Use of Piepmeier v. Camren, 226 Mo.App. 100, 41 S.W.2d 902;

and Donati **v.** Gualdoni, 358 Mo. 667, 216 S.W.2d 519. A reading of these cases discloses that they in no way conflict with the rule announced supra. In fact, they support it.

■ The record in this case does not warrant our holding that the trial court abused its discretion in ruling adversely to defendants on the ground that the evidence was the result of perjury.

There being no other error preserved, the judgment should be affirmed. It is so ordered.

All concur.