HOODCO OF POPLAR BLUFF,
INC., A Missouri Corporation,
Plaintiff–Respondent,

v.

Scott A. BOSOLUKE, Defendant–
Appellant.

No. 22712.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 9, 1999.

Keith D. Sorrell, Spain, Merrell and Miller, L.L.P., Poplar Bluff, for appellant.

Elizabeth A. Blaich, Summers & Blaich, P.C., Poplar Bluff, for respondent.

PHILLIP R. GARRISON, Chief Judge.

Hoodco of Poplar Bluff, Inc. ("Plaintiff") sued Scott A. Bosoluke ("Defendant") seeking damages for conversion as well as punitive damages. Following a jury verdict for Defendant, Plaintiff filed a motion for new trial in which it alleged that Defendant had committed perjury during the trial. This appeal is from the trial court's order granting the motion for new trial.

Plaintiff operated retail building supply stores known as "Hood's," one of which is located in Poplar Bluff, Missouri. Defendant's duties as manager of the Poplar Bluff store included purchasing inventory. Another of Plaintiff's employees, Denny Maggos ("Maggos") quit and started his own company, which operated in a similar fashion to Plaintiff. Plaintiff's comptroller testified at trial that when Maggos left his employment with Plaintiff, Plaintiff's other employees were instructed not to do any business with Maggos. Defendant, however, testified that he was instructed that he could purchase inventory in conjunction with Maggos ("split trailer loads") as long as each company received its own bill for the portions of the load received by it.

In December 1994, Defendant quit his employment with Plaintiff after learning that he was under suspicion for stealing, and went to work for Maggos. This followed an investigation by Plaintiff's owner concerning Defendant's activities with Maggos while still employed by Plaintiff. At trial, one of Plaintiff's former employees, Glenn Ward ("Ward") testified that materials were improperly shipped from Plaintiff's Poplar Bluff store to Maggos' store in Illinois on two occasions. Ward also testified that he voluntarily quit his job with Plaintiff because of a personality conflict with his manager, Brian Davis. He specifically denied having been fired. Defendant, however, testified that he fired Ward because of the conflicts between Ward and Davis.

It was the conflict in the testimony of Ward and Defendant concerning whether Ward's departure from Plaintiff's employ-ment was voluntary or not which formed the basis for Plaintiff's contention that Defendant had committed perjury. At a hearing on the motion for new trial, Plaintiff's owner identified Ward's last timecard as a business record of Plaintiff. The card contained a note written by an assistant manager, Beverly Phipps ("Phipps"), saying, "Left on September 5 th, had another job, ended up going back to Wal–Mart." He also testified that no record of Ward being fired was found in the company files, although such information is to be recorded if an employee is terminated. He also testified that Ward did not file a claim for unemployment benefits. The trial court, in ordering a new trial, concluded that Defendant's testimony about the firing was false and likely occasioned an improper verdict. This appeal is from that order.

Defendant raises two issues on this appeal. In one, he contends that the trial court improperly considered the note attached to Ward's timecard, over his hearsay objection, in ruling on the motion for new trial. In the other, he argues that the trial court's decision to sustain Plaintiff's motion for new trial was arbitrary and an abuse of discretion because there was no evidence that Defendant willfully and deliberately testified falsely, and that the "discrepancy" in the testimony did not involve a material, disputed fact relevant to the issues.

■ We first consider the propriety of overruling Defendant's objection to the portion of Ward's last timecard containing the hand-written note saying, "Left on September 5 th, had another job, ended up going back to Wal–Mart." The timecard, with the attached note, was offered during a hearing on Plaintiff's motion for new trial. Defendant's objection was "It's a hearsay statement. It's a statement of [Phipps]." In attempting to clarify Defendant's objection, the trial court said to Defendant's counsel, "As I understand it you don't object to the admission of the record?" Defendant's counsel responded,

"No, I don't. I don't object to it as being a copy of a business record, it's a time card [sic], but if it contains statements from someone who is not testifying it's hearsay." Defendant further clarifies his position in his brief by saying:

> We assert that the card is admissible, but the written statement of [Phipps] is excludable hearsay. It is her out-of-court statement, offered for the truth of the statement. She did not ever testify as to the nature of that statement. As such, it is inadmissible hearsay and our objection should have been sustained.

Defendant did not object to the introduction of the document as a business record, but instead objected to a portion of it as being hearsay. An objection to a business record as hearsay fails to recognize that such a record, admitted pursuant to § 490.680, amounts to an exception to the hearsay rule. *Helton v. Director of Revenue*, 944 S.W.2d 306, 309 (Mo.App. W.D.1997). *See also Smith v. Wal–Mart Stores, Inc.*, 967 S.W.2d 198, 205 (Mo.App. E.D.1998). The business record exception to the hearsay rule allows the introduction into evidence of records qualified as business records without the personal appearance of those who prepared the records. *Helton*, 944 S.W.2d at 309. The business records exception does not guarantee that statements made out of court by third parties to the person who prepared the report have evidentiary value as competent evidence, when properly objected to. *Id.* For instance, on proper objection, a statement made by a third party witness is not to be considered as substantive evidence. *Id.* It has been said that the appropriate test for admissibility of specific portions of business records is whether the person whose opinion is recited in the record could have testified regarding those portions if present at trial. *Sigrist by and through Sigrist v. Clarke*, 935 S.W.2d 350, 354 (Mo.App. S.D.1996).

Here, the objection to the written attachment to the timecard was that it was hearsay. As indicated above, a hearsay objection to records admissible as business records is ineffective. Defendant does not take the position that the written statement in question was hearsay upon hearsay, and his objection when the document was offered in evidence did not so indicate. In fact, Defendant explains his position by saying in his brief that the part objected to should have been excluded as hearsay because "[i]t [was] [Phipps'] out-of-court statement, offered for the truth of the statement." It appears clear to us that the objection made and pursued by Defendant is simply that the statement should have been excluded because Phipps was not present to testify. This is the very objection that the business records exception to the hearsay rule is designed to avoid.

Defendant cites *State v. Thrasher*, 654 S.W.2d 142 (Mo.App. E.D.1983), contending that it involved the same issue as here. *Thrasher* involved a prosecution for kidnapping and rape in which the trial court admitted a portion of the complainant's hospital record. The portion of the record about which the defendant complained included observations of and statements made by the complainant which were entered in the record by a social services employee. There the court held that those portions of the record should not have been admitted, saying that they were "hearsay upon hearsay," and that the social services worker could not have testified about them if present to testify at trial. *Id.* at 144. In *Thrasher*, the statements in question were characterized by the appellate court as hearsay upon hearsay. In the instant case, however, the record is not clear that Phipps based the statement in the written portion of the record upon what Ward told her, and Defendant does not make that argument.

Based upon the objection made by Defendant to the written portion of the timecard, we are not persuaded that the trial court erred in admitting and considering it in ruling on the motion for new trial. This point is denied.

■ In his other point, Defendant contends that the trial court's granting of the new trial was arbitrary and an abuse of discretion because no evidence was presented at the hearing on the motion for new trial that Defendant "willfully and deliberately testified falsely and that the discrepancy in this testimony does not involve a material, disputed fact relevant to the issues at trial."

■ It is largely within the discretion of the trial court to determine whether perjury occurred and whether an improper verdict was occasioned thereby. *Humfeld v. Langkop,* 591 S.W.2d 251, 254 (Mo.App. W.D.1979). It is only in cases in which the evidence clearly discloses that the trial court has abused its discretion that an appellate court is warranted in interfering with the judgment on this ground. *Calvin v. Lane,* 297 S.W.2d 572, 575 (Mo.App.K.C. 1957). *See also In re Marriage of Clark,* 813 S.W.2d 123, 125 (Mo.App. S.D.1991). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State ex rel. Webster v. Lehndorff Geneva,* 744 S.W.2d 801, 804 (Mo.banc 1988).

Here, Ward testified, when cross-examined by Defendant's counsel, that he quit and was not fired by Defendant. Defendant, on direct examination, testified that he fired Ward. Defendant's counsel then argued, in closing, that Ward was in fact fired by Defendant and had an "ax to grind" in his testimony. He was characterized as Plaintiff's "star witness who has ever [sic] reason to not tell the truth." As indicated above, at the hearing on the motion for new trial, Plaintiff introduced Ward's final timecard saying that Ward "Left on September 5 th, had another job, ended up going back to Wal–Mart." The

owner of Plaintiff also testified at that hearing that Phipps was the assistant manager when Ward left Plaintiff's employment; that they checked it out and Ward went back to his job at Wal–Mart; and the written statement on the timecard was in accordance with company procedures for employees who voluntarily leave their employment. He also testified Plaintiff's policy was to maintain records showing whether an employee quit his job or whether he was fired, but that in this case there was no record that Ward was fired.

■ The granting of a new trial on the ground of perjury requires a showing that the witness willfully and deliberately testified falsely. *Calvin,* 297 S.W.2d at 575. It has been said that the trial judge enjoys the advantage of seeing and observing the witnesses while testifying, and is in a much better position to judge their credibility than is an appellate court, which merely reads the cold record. *Id.* In fact, in at least one case, the trial court's granting of a new trial on the basis of perjured testimony was affirmed even when it made that determination without the aid of additional evidence presented in support of the motion for new trial. *Donati v. Gualdoni,* 358 Mo. 667, 216 S.W.2d 519, 522 (1948). Other courts have made it clear that a new trial should not be ordered on the basis of claimed perjury where no additional evidence would be presented on a re-trial because the jury had an opportunity to evaluate the evidence and the credibility of witnesses. *Loveless v. Locke Distributing Co.,* 313 S.W.2d 24, 32 (Mo.1958).

In its order granting a new trial, the trial court said, *inter alia:*

The [Defendant], testified at trial that the testimony of Plaintiff's witness, [Ward], was false and that he, [Defendant], had "fired" [Ward] while both were employed by Plaintiff, because of problems with such employee. This testimony was offered to impeach Plaintiff's witness Ward. Ward's testimony was material to Plaintiff's case both as to

what he observed Defendant doing and statements made by Defendant to explain his actions. Based upon evidence adduced at the hearing on Plaintiff's Motion for New Trial, the trial testimony of [Defendant] that he had "fired" [Ward] was false.

The Court further finds that such testimony of [Defendant] was willful and deliberate in that the evidence adduced post trial was that a contemporaneous store record showed [Ward] to have terminated employment voluntarily for the purpose of returning to earlier employment, that no record of any involuntary termination or problems with [Ward] was made by [Defendant] nor any other employee, though company procedures required such record to be made. At the time this record was made, Defendant was manager of the store generating the record.

. . . .

The Court further finds that the original trial testimony of [Defendant] with respect to the firing of such witness likely occasioned an improper verdict.

Considering the discretion vested in the trial court concerning such matters, and further considering the fact that additional evidence was presented in support of the motion for new trial beyond that heard by the jury, which was obviously interpreted by the trial court as indicating perjury, we are constrained to affirm the order in question. We are unable to conclude that the trial court was arbitrary and abused its discretion in so ordering.

The order granting a new trial is affirmed. The case is remanded to the trial court for that purpose.

MONTGOMERY, P.J., and PREWITT, J., concur.